# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| Paul Yablon and Jill Yablon, | : | **No. 07 CV 11040 (DLC)** |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| Dental Excellence of Blue Bell, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## NOTICE OF MOTION TO DISMISS

TO:     Jonathan Sack, Esquire
        Sack & Sack
        110 East 59th Street, 19th Floor
        New York, New York 10022

**PLEASE TAKE NOTICE** that pursuant to Rule 12(b)(2) of the Federal Rules of Civil

Procedure, defendants, Dental Excellence of Blue Bell, Kenneth B. Siegel and Cindy Siegel,

hereby move for an order dismissing this action. In support of this motion, defendants shall rely

upon the affidavit(s) and memorandum of law filed contemporaneously herewith, as well as any

other documents attached thereto or filed to date in this action.

PLEASE TAKE FURTHER NOTICE that opposing affidavits and memoranda, if any,

must be served on the undersigned within ten days of the date of service of this motion.

Cozen O'Connor

Dated: December 14, 2007        /s/Devindra Ramesh Tiwari Kissoon
Devindra Ramesh Tiwari Kissoon (DK 8130)
909 Third Avenue
New York, NY 10022
Telephone: 212.453.3829
Attorneys for Defendants

Of Counsel:

Richard E. Miller
P.O. Box 191
Chadds Ford, PA 19317
(610)793-2032
(Pro Hac Vice Motion Pending)

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **Paul Yablon and Jill Yablon,** | : | |
| | : | **No. 07 CV 11040 (DLC)** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **Dental Excellence of Blue Bell, et al.** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Defendants, Dental Excellence of Blue Bell ("DEBB"), Kenneth B. Siegel and Cindy

Siegel, pursuant to Rule 12(b)(2), Fed. R. Civ. P., have moved to dismiss this action for lack of

personal jurisdiction and, in support thereof, submit this Memorandum of Law.


Cozen O'Connor


 /s/ Devindra Ramesh Tiwari Kissoon
Devindra Ramesh Tiwari Kissoon (DK 8130)
909 Third Avenue
New York, NY 10022
Telephone: 212.453.3829
Attorneys for Defendants

Of Counsel:

Richard E. Miller
P.O. Box 191
Chadds Ford, PA 19317
(610)793-2032
(Pro Hac Vice Motion Pending)

Dated: December 14, 2007

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

LEGAL DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## <u>INTRODUCTION</u>

This breach of contract action arises from the plaintiffs' (Paul and Jill Yablon) agreement to payoff certain debts of the defendants. From October 2006 through April 2007, the Yablons provided approximately $560,000.00 to payoff six creditors of DEBB, the Siegels' dental business. The Yablons provided these funds without any discussions or agreement, written or verbal, regarding the terms of repayment. The Yablons and the Siegels are related, and the Yablons deemed their actions in paying off these debts to be a "mitzvah". Five months after these debts were paid off, the parties commenced negotiations regarding the repayment terms, which were unsuccessful. As a result, the Yablons instituted this action for breach of contract.

This action was instituted in New York presumably because that is where the plaintiffs' attorney is located. Otherwise, there are no contacts with this forum. The Yablons reside in Connecticut and the Siegels reside in Pennsylvania. DEBB is a Pennsylvania corporation which does not do any business in New York. All of the negotiations were by E-mail, regular mail and telephone calls between Connecticut and Pennsylvania. This dispute has no nexus to New York, nor does the complaint allege one. Clearly, the New York courts lack personal jurisdiction over the defendants.

## FACTUAL BACKGROUND[1]

The plaintiffs, Paul Yablon and Jill Yablon, are citizens of the State of Connecticut residing at 140 Parsonage Road, Greenwich, Connecticut.  The individual defendants, Kenneth B. Siegel and Cindy Siegel, are citizens of the Commonwealth of Pennsylvania residing at 821 Firethorn Circle, Dresher, Pennsylvania.   DEBB is a Pennsylvania corporation with offices at 706 Dekalb Pike, Blue Bell, Pennsylvania.  DEBB is a dental practice owned and operated by the Siegels.  The Yablons and the Siegels are related.[2]

In or about May of 2006, the Yablons offered to help DEBB and the Siegels with certain business debts they had incurred.  The Yablons, with the assistance of an attorney and a lawyer in Pennsylvania, reviewed the business operations of DEBB and agreed to provide the plaintiffs with the funds needed to payoff six creditors.

The Yablons unilaterally decided to disburse the funds to payoff these debts in one of two ways.  With respect to four of the creditors, the Yablons wired funds directly to the Siegels, who then remitted those funds to those creditors.  For the other two creditors, the Yablons apparently sent funds to their attorney, Jonathan Sack, who then remitted such funds to those two creditors.  Mr. Sack's office is in New York.  By April of 2007, all six creditors had been paid off in the aggregate amount of approximately $560,000.00.

Five months later (September 2007), the parties began discussing the terms of repayment.  All of these discussions were by mail, E-mail or telephone calls between Pennsylvania and

---

[1]  The factual allegations set forth herein are supported by the Verification of Cindy Siegel (attached as Exhibit "A") and the Complaint (attached as Exhibit "B").

[2]  Ken Siegel and Jill Yablon are brother and sister.

2

Connecticut.    On September 25, 2007, the Yablons E-mailed (from Connecticut) proposed loan documents to the Siegels (in Pennsylvania), the relevant terms of which included that the defendants agree to submit to the jurisdiction of the Connecticut courts. A copy of the Promissory Note included in these documents is attached as Exhibit "C".  The defendants did not agree to this proposal.

On October 19th, the Yablons E-mailed (from Connecticut) revised proposed loan documents to the Siegels (in Pennsylvania), the relevant terms of which included that the defendants agree to submit to the jurisdiction of the Connecticut courts. A copy of the Promissory Note included in these documents is attached as Exhibit "D".  The defendants did not agree to this proposal.

On October 23rd, the Siegels defendants sent by  overnight mail (from Pennsylvania) to the Yablons (in Connecticut), a proposed Promissory Note, the relevant terms of which included that the plaintiffs agree to submit to the jurisdiction of  the Pennsylvania courts, along with a check for the first payment due thereunder.  A copy of this Promissory Note is attached as Exhibit "E".  The plaintiffs did not agree to this proposal and never negotiated the check.

Unfortunately, the parties were unable to agree to the terms of repayment and, in November 2007, the plaintiffs instituted this action in the Supreme Court of New York, Index No. 603803/07.  This action was removed to this Court on December 5, 2007.  This action alleges one Count of breach of contract, and seeks the repayment of the funds disbursed by plaintiffs, plus interest and attorney's fees.  A copy of plaintiffs' Complaint is attached as Exhibit "B".

## **LEGAL DISCUSSION**

It is well established that on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant.  The plaintiff's burden depends on the procedural posture of the litigation. At the pleading stage, the plaintiff is required to make only a *prima facie* showing. Kahn Lucas Lancaster, Inc. v. Lark Intern. Ltd., 956 F.Supp. 1131, 1134 (S.D.N.Y. 1997).  The court may consider affidavits and documents submitted by the parties without converting the motion into one for summary judgment under Rule 56.  In determining whether a plaintiff has met its burden, all pleadings and affidavits are construed in the light most favorable to plaintiff, and all doubts are resolved in the plaintiff's favor.  Credit Suisse Securities (USA) LLC v. Hilliard, 469 F.Supp.2d 103 (S.D.N.Y. 2007).  If, however, the complaint lacks factual allegations sufficient to confer such jurisdiction, the action should be dismissed.  Guardino v. American Sav. & Loan Ass'n of Florida, 593 F.Supp. 691 (E.D.N.Y. 1984).

In a diversity case, the court must apply the personal jurisdiction law of the forum state. The court's inquiry is two-part.   First, there must be a basis for personal jurisdiction under New York state law.   Second, the exercise of jurisdiction must comport with the requirements of due process.  Kahn Lucas Lancaster, Inc. v. Lark Intern. Ltd., 956 F.Supp. 1131, 1134 (S.D.N.Y. 1997).

There are two categories of personal jurisdiction: general jurisdiction and specific jurisdiction.  New York's CPLR §301 provides general jurisdiction over a non-domiciliary defendant where that defendant is "engaged in such a continuous and systematic course of doing business here as to warrant a finding of [his] presence in this jurisdiction."  Beacon Enter., Inc. v.

4

Menzies, 715 F.2d 757, 762 (2nd Cir.1983).  "The non-domiciliary must be doing business in

New York not occasionally or casually, but with a fair measure of permanence and continuity."

Id.(internal quotations omitted).   In this case it is not alleged that the Siegels or DEBB reside in,

or do any business in, New York.  Thus, general jurisdiction is not at issue in this case.

Specific jurisdiction applies to situations where the claim arises from the defendant's

contacts with New York.  Section 302(a)(1) of the New York long-arm statute provides that a

court may exercise personal jurisdiction over any foreign defendant who "transacts any business

within the state."  NY CPLR §302(a)(1).   For a court to exercise jurisdiction under this

provision, the claim must "arise from" the transaction of business within the state.  Agency Rent

A Car System, Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2nd Cir. 1996).

The plaintiff must show that the defendant purposefully availed itself of the privilege of

conducting activities within New York, thus invoking the benefits and protections of its laws.

Courts examine the totality of defendant's contacts with New York, rather than focus on each

isolated event.  Although a single purposeful act in New York can be sufficient to support

jurisdiction, the nature and quality of the New York contacts must be examined to determine

their significance.  In judging whether there are sufficient contacts, the New York Court of

Appeals has cautioned courts to not forget that defendants, as a rule, should be subject to suit

where they are normally found or where they conduct substantial general business activities.

Kahn Lucas Lancaster, Inc., 956 F.Supp. at 1135.

Accordingly, the first question to be addressed is whether the out-of-state defendant

transacted business in New York.  This issue is determined by considering a variety of factors,

including:  (i) whether the defendant has an on-going contractual relationship with a New York

5

corporation;  (ii) whether the contract was negotiated or executed in New York, and whether,

after executing a contract with a New York business, the defendant visited New York for the

purpose of meeting with parties to the contract regarding the contractual relationship; (iii) what

the choice-of-law clause is in any such contract; and (iv) whether the contract requires

franchisees to send notices and payments into the forum state or subjects them to supervision by

a New York entity in the forum state.  Although all of these factors are relevant, no one factor is

dispositive.   Other factors may also be considered, and the ultimate determination is based on

the totality of the circumstances.  Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.,

98 F.3d 25, 29 (2nd Cir. 1996).

Applying these factors, the New York courts have consistently refused to sustain

§302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale to a

party in New York.  See Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 766 (2nd Cir.1983);

Burrows Paper Corp. v. R.G. Eng'g, Inc., 363 F.Supp.2d 379, 386 (N.D.N.Y.2005);  Longwood

Resources Corp. v. C.M. Exploration Co., 988 F.Supp. 750, 752 (S.D.N.Y.1997);  Slapshot Bev.

Co. v. Southern Packaging Mach., 980 F.Supp. 684, 687 (E.D.N.Y.1997); Lawrence Wisser and

Co., Inc. v. Slender You, Inc., 695 F.Supp. 1560 (S.D.N.Y. 1988).  Rather, communications into

New York will only be sufficient to establish personal jurisdiction if they were related to some

transaction that had its "center of gravity" inside New York, into which a defendant "projected

himself."  Wilhelmshaven Acquisition Corp. v. Asher, 810 F.Supp. 108, 112 (S.D.N.Y.1993);

Palace Exploration Co. v. Petroleum Dev. Co., 41 F.Supp.2d 427, 433 (S.D.N.Y.1998).

Nor does the passive receipt of money in New York, or the fact that a payment related to

the contract is sent to New York, constitute sufficient grounds for conferring personal

6

jurisdiction.  <u>Associated Aviation Underwriters v. DAP Holding, N.V.</u>, 2003 WL 21277148

(S.D.N.Y. 2003); <u>Lawrence Wisser and Co., Inc. v. Slender You, Inc.</u>, 695 F.Supp. 1560

(S.D.N.Y. 1988); <u>Leema Enterprises, Inc. v. Willi</u>, 575 F.Supp. 1533 (S.D.N.Y. 1983);

<u>Symenow v. State Street Bank and Trust Co.</u>, 244 A.D.2d 880, 665 N.Y.S.2d 141 (4th Dept.

1997).

     In addition, the **unilateral** conduct of the plaintiff or some third party does not serve to

confer jurisdiction over an out-of-state defendant:

> The unilateral activity of those who claim some relationship with a nonresident defendant
> cannot satisfy the requirement of contact with the forum State.  The application of that
> rule will vary with the quality and nature of the defendant's activity, but it is essential in
> each case that there be some act by which the defendant purposefully avails itself of the
> privilege of conducting activities within the forum State, thus invoking the benefits and
> protections of its laws.

<u>Hanson v. Denckla</u>, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-1240 (1958).

     If the court determines that the defendant transacted business in New York, the second

question to be addressed is whether the claim arises from the defendant's business transactions in

New York.   "A claim 'arises out of' a defendant's transaction of business in New York "when

there exists 'a substantial nexus' between the business transacted and the cause of action sued

upon."  <u>Rent A Car System, Inc.</u>, 98 F.3d at 31.

     Finally, in  order to satisfy the Due Process Clause of the United States Constitution, the

exercise of long-arm jurisdiction by New York must be based on defendants' "minimum

contacts" with the state and must comport with "traditional notions of fair play and substantial

justice."  <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945).  In

this regard, the defendant's contacts with New York cannot be "random," "fortuitous," or

"attenuated."  See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 480, 105 S.Ct. 2174, 2186 (1985).

Applying the  Agency Rent A Car factors, it is clear that none of the requirements for personal jurisdiction have been met.  There is no on-going contractual relationship with a New York entity.[3]  The contract (assuming, *arguendo*, that one exists) was not negotiated or executed in New York.  The defendants did not visit New York for the purpose of meeting with the Yablons to discuss a contractual relationship.  There is no choice-of-law clause agreed to by the parties.  Nor is there a contract which requires the Siegels to send notices and payments into New York or subject them to supervision by a New York entity.

To the extent that there is a legally enforceable contract between the parties which pertains to the fundamental issue in this case (i.e., the repayment of the funds disbursed by the plaintiffs), the Complaint alleges no facts which establish that this contract was negotiated in New York or that it required the defendants to perform their contractual obligations in New York.  Moreover, the Verification of Cindy Siegel establishes that **all** of the negotiations giving rise to this purported contract took place outside of New York.  See Exhibit "A". Clearly, the Complaint fails to establish that the defendants transacted business in New York.

---

[3]  The complaint does not allege the existence of an explicit contract between the parties. Although it alleges that "loans" were made to the defendants, it does not allege that the parties reached any agreement as to the terms of those purported loans (either before or after the money was disbursed).  It only alleges that the parties attempted to negotiate the terms of repayment, but failed to do so.  It further alleges that the plaintiffs rejected the terms proposed by the Siegels, and the Siegels rejected the terms proposed by the plaintiffs.  See Complaint at ¶¶15-20.

The **only** factual allegation in the Complaint that has **anything** to do with New York is the following:

> Plaintiffs made the Loans by placing the monies in the custody, possession and control of their attorney, Jonathan Sack, located in New York County, who made the disbursements to Defendants in the manner and intervals set forth in the Schedule of Loans described herein.

Complaint at ¶12. Assuming, *arguendo*, that this allegation is true[4], it clearly is not sufficient to establish that the **defendants** transacted business in New York for the reasons discussed below.

First, this case has nothing to do with the procedure in which the defendants' creditors were paid off. Plaintiffs' unilateral decision to have their attorney act as a disbursement agent for some or all of the debts paid off has no bearing on this dispute. The "center of gravity" of this dispute is not the process utilized to payoff the creditors. It is whether the defendants have any obligation to repay these funds and, if so, under what terms. Therefore, the only factual allegation in the Complaint that refers to New York is entirely irrelevant to the issue of jurisdiction.

Second, even if relevant, the plaintiffs' **unilateral** decision to send money to their attorney to forward to the defendants, cannot be attributed to the **defendants** for purposes of jurisdiction. Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-1240 (1958)("The unilateral activity of those who claim some relationship with a nonresident defendant cannot

---

[4] This allegation is disputed in several respects. There were not nine separate loans made to defendants. The parties were contemplating one loan in the aggregate amount of the funds disbursed, as evidenced by the proposed promissory notes exchanged by the parties. See Exhibits "C", "D" and "E". Nor were any funds transferred from the plaintiffs' attorney to the defendants. Funds were transferred directly from the plaintiffs to the defendants by wire, which were used to payoff four creditors. Other funds were apparently sent from the plaintiffs to their attorney, which he apparently used to payoff the other two other creditors. At no time did the plaintiffs' attorney send the defendants any funds. See Exhibit "A".

9

satisfy the requirement of contact with the forum State.").

Third, the New York attorney's mere receipt of funds sent by the plaintiffs does not constitute the transaction of business (particularly when there is no contractual requirement to disburse the funds in this manner).  Accord Associated Aviation Underwriters v. DAP Holding, N.V., 2003 WL 21277148 (S.D.N.Y. 2003)(payment processed by New York bank insufficient to confer personal jurisdiction); Ljungkvist v. Rainey Kelly Campbell Roalfe, 2001 WL 1254839 at pp.3-4 (S.D.N.Y. 2001) (payment made to plaintiff's New York bank account insufficient to create personal jurisdiction against defendant) Lawrence Wisser and Co., Inc. v. Slender You, Inc., 695 F.Supp. 1560 (S.D.N.Y. 1988)(fact that plaintiff paid defendant by sending money from New York insufficient to confer personal jurisdiction); Leema Enterprises, Inc. v. Willi, 575 F.Supp. 1533 (S.D.N.Y. 1983)(passive receipt of funds insufficient to confer personal jurisdiction);  Symenow v. State Street Bank and Trust Co., 244 A.D.2d 880, 665 N.Y.S.2d 141 (4th Dept. 1997)(wiring money to a party in New York insufficient to confer personal jurisdiction).

In short, whatever agreement may be found to exist between the parties in this case, it certainly did not involve the defendants transacting any business in New York.

Even if the plaintiffs' attorney's disbursement funds somehow constitutes the defendants' transaction of business in New York, it is obvious that plaintiffs' breach of contract claim does not "arise from" the defendants' transaction of business in New York.  Whatever obligations the defendants may have under the alleged contract, these obligations have nothing to do with the manner in which the monies were disbursed.

10

Finally, conferring jurisdiction based on plaintiffs' unilateral conduct in using their attorney as a disbursement agent for two of the debts does not comport with due process for the reasons discussed above.  Hanson v. Denckla, supra.  Accordingly, this action must be dismissed.

## CONCLUSION

For the reasons set forth above, this action must be dismissed for lack of personal jurisdiction.

Respectfully submitted,

Cozen O'Connor

Dated: December 14, 2007

 /s/Devindra Ramesh Tiwari Kissoon
Devindra Ramesh Tiwari Kissoon
(DK 8130)
909 Third Avenue
New York, NY 10022
Telephone: 212.453.3829
Attorneys for Defendants

Of Counsel:

Richard E. Miller
P.O. Box 191
Chadds Ford, PA 19317
(610)793-2032
(Pro Hac Vice Motion Pending)

11

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that a true and correct copy of this Motion to Dismiss was served by U.S. mail, first-class, postage prepaid and on December 14, 2007 upon the following parties:

Jonathan Sack, Esquire

Sack & Sack

110 East 59th Street

19th Floor

New York, New York 10022

 /s/ Richard E. Miller

Richard E. Miller

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **Paul Yablon and Jill Yablon,** | : | |
| | : | **No. 07 CV 11040 (DLC)** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **Dental Excellence of Blue Bell,** | : | |
| **Kenneth B. Siegel and** | : | |
| **Cindy Siegel,** | : | |
| | : | |
| | : | |

<u>**ORDER**</u>

AND NOW, this _____, day of _____, 200__, upon consideration of

Defendants' Motion To Dismiss, and all papers in support thereof and in opposition thereto, and

for good cause showing, it is hereby ordered that said Motion is granted and this action is

dismissed.

Dated: _____

_____
United States District Judge

EXHIBIT "A"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Paul Yablon and Jill Yablon, | : | |
| | : | No. 07 CV 11040 (DLC) |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| Dental Excellence of Blue Bell, et al. | : | |

### VERIFICATION OF CINDY SIEGEL

1.      I am a defendant in this matter, and I make this verification based on my personal knowledge of the facts set forth herein.

2.      Kenneth B. Siegel and I are married and reside at 821 Firethorn Circle, Dresher, Pennsylvania.  Ken's sister is Jill Yablon.

3.      Jill Yablon is married to Paul Yablon, and they reside at  140 Parsonage Road, Greenwhich, Connecticut.

4.       Ken is a dentist and the sole shareholder of Dental Excellence of Blue Bell, PC ("DEBB"), which is the corporation through which Ken operates his dental practice.  DEBB is a Pennsylvania corporation with offices at 706 Dekalb Pike, Blue Bell, Pennsylvania.

5.      In or about May of 2006, the Yablons offered to help us with certain debts we had, almost all of which were for the business.  They hired an attorney and an accountant in Philadelphia to analyze the business and consulted with us on how to try and reduce the debt.  Their strategy was to negotiate the debt down and then pay it off.

6.      When it became time to payoff a particular creditor, the Yablons did it in one of two ways.  For some of the debts, they wired us the funds in Pennsylvania and we submitted the funds to the creditors.  For other debts, the Yablons decided to have their attorney, Jonathan

Sack, remit the funds to the creditors. By April of 2007, all of the debt at issue had been paid off with the funds provided by the Yablons, which totaled approximately $560,000.00.

7.      In September 2007, we finally began discussing the terms of repayment. Several proposals were sent back and forth, and negotiations were ongoing.

8.      On September 25, 2007, the Yablons E-mailed us loan documents which required us to submit to the jurisdiction of the Connecticut courts (the "First Loan Proposal"). We did not agree to this proposal.

9.      On October 19th, the Yablons E-mailed us loan documents which required us to submit to the jurisdiction of the Connecticut courts (the "Second Loan Proposal"). We did not agree to this proposal.

10.     On October 23rd, we sent the Yablons, by overnight mail, loan documents which required them to submit to the jurisdiction of the Pennsylvania courts (the "Third Loan Proposal") along with a check for the first payment due thereunder. They did not agree to this proposal and never negotiated the check.

11.     Throughout this time, all of our communications with the Yablons were by mail, E-mail or telephone, sent from/to Pennsylvania and Connecticut. We never met with them in New York or communicated with them while they were in New York.

12.     These statements are made subject to the penalties of perjury.

Dated: December 13, 2007          Cindy Siegel

EXHIBIT "B"

**SACK & SACK, ESQS.**
110 East 59th Street, 19th Floor
New York, New York 10022
Tel.: (212) 702-9000
Fax: (212) 702-9702

*Attorneys for Plaintiffs, Paul Yablon and Jill Yablon*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------- x

|  |  |  |
|---|---|---|
| **PAUL YABLON AND JILL YABLON,** | : | Index No. 608803/07 |
|  | : |  |
| Plaintiffs, | : | **COMPLAINT** |
|  | : |  |
| — against — | : | **JURY TRIAL REQUESTED** |
|  | : |  |
| **DENTAL EXCELLENCE OF BLUE BELL AND** | : |  |
| **KENNETH B. SIEGEL AND CINDY SIEGEL,** | : |  |
| **INDIVIDUALLY,** | : |  |
|  | : |  |
| Defendants. | : |  |

-------------------------------------------------------------------- x

This action is brought by Plaintiffs, Paul Yablon and Jill Yablon ("*Plaintiff*"), by their attorneys, Sack & Sack, Esqs., against Dental Excellence of Blue Bell, Kenneth B. Siegel and Cindy Siegel ("*Defendants*"):

Plaintiffs, as and for their Complaint, alleges as follows:

## INTRODUCTION

1.  This dispute emanates from Defendants' breach of contract.

2.  As shown in more detail below, Defendants are indebted to Plaintiffs on a series of separate but contemporaneous unconditional loans for the payment of money, to wit (each, a "*Loan*", collectively, the "*Loans*"), each provided as part of the same general transaction.

3.  Pursuant to those unconditional Loans, Defendants agreed to pay to Plaintiffs the aggregate sum of $568,240.50, which has accrued interest, as of the date of this Complaint, in the amount of $44,295.48, bringing the total amount due and payable to $612,535.98 (the "*Outstanding Debt*").

4.  Defendants have refused to repay the Outstanding Debt.

5.  By the filing of this Complaint, Plaintiffs seeks adjudication and judgment on the merits of their lawful entitlement to repayment of the Outstanding Debt based upon the loans made to Defendants upon promises of repayment, which promises Plaintiffs reasonably relied upon to their detriment, and for a declaration of their rights in accordance with the parties' prior agreements.

## PARTIES

6.  Paul and Jill Yablon are individuals having an address of 140 Parsonage Road, Greenwich, CT 06830, County of Fairfield.

7.  Dental Excellence of Blue Bell maintains an address of 706 Dekalb Pike Village Square, Blue Bell, Pennsylvania.

2

8.     Kenneth and Cindy Siegel are individuals having an address of 821 Firethorn Circle, Dresher, PA   19025, situated in the county of Montgomery, State of Pennsylvania.

## VENUE AND JURISDICTION

9.     Venue is derived by virtue of the fact that Plaintiff made the loans described herein in New York County and, accordingly, the transactions and events which give rise to this Complaint occurred in New York County.

10.     This Court has personal jurisdiction over Defendants due to proper service being made upon it and the events which give rise to this Complaint occurred here in New York County.

## FACTS

The claims set forth herein arise from the following set of facts:

## PLAINTIFFS MAKE LOANS IN NEW YORK COUNTY

11.     Beginning on October 12, 2006, and continuing through April 5, 2007, Plaintiffs made a series of nine (9) Loans to Defendants.

12.     Plaintiffs made the Loans by placing the monies in the custody, possession and control of their attorney, Jonathan Sack, located in New York County, who made the disbursements to Defendants in the manner and intervals set forth in the Schedule of Loans described herein.

13.     Summarized below are the payments which were due pursuant to each

3

loan (each, "*Loan Amount*"), the date of each loan, and the amounts that have been received to date by Plaintiffs in repayment of said Loan Amounts:

## SCHEDULE OF LOANS

| Date of Loan | Principal Amount of Loan | Interest Rate | Accrued Interest as of November 1, 2007 | Amount Repaid to Date | Total Principal and Interest Due as of November 1, 2007 |
|---|---|---|---|---|---|
| October 12, 2006 | $10,0000.00 | 12% | $1,300.00 | $0.00 | $11,300.00 |
| November 28, 2006 | $22,665.00 | 12% | $2,266.50 | $0.00 | $24,931.50 |
| November 30, 2006 | $36,615.50 | 12% | $3,661.50 | $0.00 | $40,276.50 |
| December 12, 2006 | $7,500.00 | 12% | $825.00 | $0.00 | $8,325.00 |
| December 14, 2006 | $12,147.00 | 12% | $1,336.17 | $0.00 | $13,483.17 |
| December 18, 2006 | $7,501.00 | 12% | $825.11 | $0.00 | $8,326.11 |
| January 9, 2007 | $1,812.00 | 12% | $181.20.00 | $0.00 | $1,993.20 |
| March 15, 2007 | $100,000.00 | 12% | $8,000.00 | $0.00 | $108,000.00 |
| April 5, 2007 | $370,000.00 | 12% | $25,900.00 | $0.00 | $395,900.00 |
| **TOTAL** | **$568,240.50** | | $44,295.48 | **$0.00** | $612,535.98 |

4

## DEFENDANTS DEFAULT ON ALL LOANS

14.    To date, Defendants have failed to remit any portion of the outstanding debt.

15.    On or about October 22, 2007, in attempts to negotiate repayment terms for the Loans, Defendants unilaterally executed an unsecured Promissory Note admitting that they are responsible for the outstanding debt of $568,240.50.

16.    The Promissory Note proffered by Defendants contained terms that were unacceptable to Plaintiffs, specifically with respect to the stated rate of interest of 4.7% and the lack of security stated therein in the event of Defendant's default.

17.    Accordingly, by executing a version of a Promissory Note in favor of Plaintiffs, albeit upon unacceptable terms, Defendants have admitted that Plaintiffs have made loans to them in the aggregate amount of $568,240.50, which are due and owing to Plaintiffs.

18.    Furthermore, Defendants have attempted to repay a portion of the principal amount of $568,240.50 by check annexed as Exhibit "B" based upon terms that were unacceptable to Plaintiffs.

19.    Plaintiffs did not cash the check indicated in Exhibit "B."

20.    Plaintiffs have provided Defendants with acceptable versions of a Promissory Note that contained acceptable terms, which Defendants have refused to execute.

5

## CONCLUSION

21.    Defendants have failed and refused to make any payments towards repayment of Loan although Plaintiffs has made numerous demands for payment.

22.    No previous application has been made for the relief requested herein.

23.    There is now due and owing to Plaintiffs the aggregate principal amount of the Loans $568,240.50, together with interest from the respective Loan Dates as well as attorneys' fees, costs and expenses, in a total amount of at least $612,535.98.

## CLAIMS AND DAMAGES

## LEGAL CLAIMS

Based upon the above allegations, Plaintiff maintains the following legal claims against Bank of America:

## COUNT ONE
### BREACH OF CONTRACT

24.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

25.    As of the date of this Complaint, Defendants remains in material breach of contract in respect of the admitted Loan Amounts by unilaterally failing to repay the Loans, which principal amount of the Loans in the aggregate is $568,240.50, together with interest from the respective Loan Dates as well as attorneys' fees, costs and expenses, in a total amount of at least $612,535.98.

6

26.      Despite promises that Plaintiffs would be repaid the Loan Amounts, Defendants have failed to repay any portion of the Loan Amounts.

27.      Accordingly, Plaintiffs are owed and entitled to $612,535.98 in breach of contract damages.

## ATTORNEYS' FEES AND COSTS

28.      Attorneys' fees and costs are warranted in this matter as the undersigned, on behalf of Plaintiff, have in good faith, attempted to negotiate a reasonable resolution with Defendant without having to refer this matter to this forum for adjudication, determination and final resolution on the merits.

## REQUEST FOR RELIEF

**WHEREFORE**, Birnbaum requests that this Court order the following relief in favor of Plaintiffs:

      I.      On Count One, the aggregate principal amount of the Loans $568,240.50, together with interest from the respective Loan Dates as well as attorneys' fees, costs and expenses, in a total amount of at least $612,535.98;

      II.     An award of prejudgment interest, costs and attorney's fees; and

      III.    Such other and further relief that this Court may deem just and proper.

Dated:    New York, New York
            November 8, 2007

                          Respectfully submitted,

                          **SACK & SACK, ESQS.**

                          By: _____
                                Jonathan Sack, Esq.

                          **Attorneys for Plaintiffs**
                          110 East 59th Street, 19th Floor
                          New York, New York 10022
                          Tel.: (212) 702-9000
                          Fax: (212) 702-9702

8

# EXHIBIT "C"

# PROMISSORY NOTE SENT BY YABLON ON SEPTEMBER 25, 2007

## NEGOTIABLE PROMISSORY NOTE

USD $568,240.50                                        *As of* **March 10, 2007**

**FOR VALUE RECEIVED, DENTAL EXCELLENCE OF BLUE BELL**, having an address of 706 Dekalb Pike Village Square, Blue Bell, Pennsylvania 19422 ("*Maker*"), promises to pay to **PAUL and JILL YABLON**, individuals having an address of 140 Parsonage Road, Greenwich, CT 06830 ("*Payee*"), in lawful money of the United States of America, the principal sum of Five Hundred and Sixty Eight Thousand Two Hundred and Forty Dollars and Fifty Cents ($568,240.50), together with interest accruing from the date hereof, accrued upon the unpaid principal balance at the applicable Federal rate of interest, in the manner provided below (the "*Loan Amount*"). All principal and interest on this Note shall be payable in full by **October 1, 2012** (the "*Maturity Date*") or earlier, as hereinafter specified. Interest shall be calculated on the basis of a year of 365 days, and charged for the actual number of days elapsed. This Note is entered into in consideration of the execution of the Loan Agreement between the parties as of even date, a copy of which is attached hereto as Exhibit "A" and made part of this Note.

1.      PAYMENTS

        1.1      PRINCIPAL AND INTEREST

Principal Interest shall be paid as follows: Principal amount of Five Hundred and Sixty Eight Thousand Two Hundred and Forty Dollars and Fifty Cents ($568,240.50) shall be payable in seventeen (17) equal quarterly installments of Thirty Three Thousand Four Hundred Twenty Five Dollars and Ninety One Cents ($33,425.91) each, made payable on April 1, July 1, October 1, and January 1 in each twelve (12) month period beginning on January 1, 2008 and the last payment being made payable on October 1, 2012. Interest shall accrue monthly at the applicable Federal rate of interest on the unpaid principal balance of this Note at each repayment date. Interest shall be payable in one (1) balloon payment made on October 1, 2012. If there occurs an Event of Default (as defined below), interest shall accrue at a rate of nine percent (9%) per annum on the unpaid principal balance and all accrued but unpaid interest on this Note and all such interest shall be payable on demand.

"*Business Day*" means any day other than a Saturday, Sunday or on any other day on which commercial banks are required or authorized to be closed in Connecticut.

        1.2      MANNER OF PAYMENT

All payments of principal and interest on this Note shall be made by check or in such other manner as Payee shall designate to Maker in writing. If any payment of principal or interest on this Note is due on a day which is not a Business Day, such payment shall be due on the next succeeding Business Day.

1.3    PREPAYMENT

Maker may, without premium or penalty, at any time and from time to time, prepay all or any portion of the outstanding principal balance due under this Note, provided that each such prepayment is accompanied by accrued interest on the amount of principal prepaid calculated to the date of such prepayment. Any partial prepayments shall be applied to installments of principal and interest in inverse order of their maturity.

1.4    SECURITY

This Note is secured by a certain second mortgage ("*Mortgage*") made by Maker to Payee on the property known 821 Firethorn Circle, Dresher, PA  19025, situated in the county of Montgomery, State of Pennsylvania, and being more particularly described in said Mortgage (the "*Premises*"). All of the covenants, terms, conditions and agreements contained in said Mortgage are hereby made a part of this instrument.  The Mortgage shall be recorded as of the date of execution of this instrument.

2.    DEFAULTS

2.1    EVENTS OF DEFAULT

The occurrence of any one or more of the following events with respect to the Maker shall constitute an event of default hereunder ("*Event of Default*"):

(a)    At the option of the Payee, if Maker shall provide written notice to Payee within five (5) days of when a payment of principal and/or interest is due stating why Maker cannot make such payment, or Maker fails to pay when due any payment of principal or interest on this Note and such failure continues for three (3) days.

(b)    If, pursuant to or within the meaning of the United States Bankruptcy Code or any other federal or state law relating to insolvency or relief of debtors (a "*Bankruptcy Law*"), Maker shall (i) commence a voluntary case or proceeding; (ii) consent to the entry of an order for relief against it in an involuntary case; (iii) consent to the appointment of a trustee, receiver, assignee, liquidator or similar official; (iv) make an assignment for the benefit of its creditors; or (v) admit in writing its inability to pay its debts as they become due.

(c)    If a court of competent jurisdiction enters an order or decree under any Bankruptcy Law that (i) is for relief against Maker in an involuntary case, (ii) appoints a trustee, receiver, assignee, liquidator or similar official for Maker or substantially all of Maker's properties, or (iii) orders the liquidation of Maker, and in each case the order or decree is not dismissed within 90 days.

(d)    Any violation by Maker of the "Inspection of Records" or "Expense Restrictions" sections of the Loan Agreement.

2.2    REMEDIES

Upon the occurrence of an Event of Default hereunder (unless all Events of Default have been cured or waived by Payee in writing), Payee may, at its option, (i) by written notice to Maker, declare the entire unpaid principal balance of this Note, together with all accrued interest thereon, immediately due and payable regardless of any prior forbearance, (ii) exercise any and all rights and remedies available to it under applicable law, including, without limitation, the right to collect from Maker all sums due under this Note. Maker shall pay all reasonable costs and expenses incurred by or on behalf of Payee in connection with Payee's exercise of any or all of its rights and remedies under this Note, including, without limitation, reasonable attorneys' fees; (iii) in respect of any month of an occurrence of an Event of Default, Payee shall have the right to ask for any additional financial information, including, but not limited to, both the financial information of Maker and personal information of Kenneth B. Siegel and Cindy Siegel, including but not limited to, P&L reports, Weekly Dental Genius Monitor, reports of cash flow and balance sheet information for Borrower, as well as copies of all major credit card statements, including, but not limited to, American Express Card; and (iv) if such Event of Default shall continue for a period of three (3) consecutive months, Maker agrees to immediately appoint Payee as receiver, without bond, over all assets and expenses of Maker for purposes of reducing expenses to allow Maker to make timely payments as provided herein.

3.    MISCELLANEOUS

3.1    WAIVER

The rights and remedies of Payee under this Note shall be cumulative and not alternative. No waiver by Payee of any right or remedy under this Note shall be effective unless in writing signed by Payee. Neither the failure nor any delay in exercising any right, power or privilege under this Note will operate as a waiver of such right, power or privilege and no single or partial exercise of any such right, power or privilege by Payee will preclude any other or further exercise of such right, power or privilege or the exercise of any other right, power or privilege. To the maximum extent permitted by applicable law, (a) no claim or right of Payee arising out of this Note can be discharged by Payee, in whole or in part, by a waiver or renunciation of the claim or right unless in a writing, signed by Payee; (b) no waiver that may be given by Payee will be applicable except in the specific instance for which it is given; and (c) no notice to or demand on Maker will be deemed to be a waiver of any obligation of Maker or of the right of Payee to take further action without notice or demand as provided in this Note.  Maker hereby waives presentment, demand, protest and notice of dishonor and protest.

3.2    NOTICES

All notices, requests, demands and other communications hereunder shall be made in writing and shall be deemed to have been given if delivered by hand or by facsimile with a confirmation copy mailed first class registered mail, return receipt requested, postage and registry fees prepaid, to the parties of this Note at the addresses first set forth above.  Any address may be changed by written notice to the other party.

### 3.3    SEVERABILITY

If any provision in this Note is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Note will remain in full force and effect. Any provision of this Note held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

### 3.4    GOVERNING LAW AND CONSENT TO JURISDICTION

This Guaranty is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the State of Connecticut (without regard to conflicts of laws principles) and shall be in all respects governed, construed, applied and enforced in accordance with the laws of the State of Connecticut. No defense given or allowed by the laws of any other state or country shall be interposed in any action or proceeding hereon unless such defense is also given or allowed by the laws of the State of Connecticut. The undersigned agrees that this Guaranty is, and is intended to be, an instrument for the payment of money only. The undersigned hereby irrevocably submit to the jurisdiction of any Connecticut State or Federal court, City of Greenwich, Fairfield County in any action or proceeding arising out of or relating to this Note or Guaranty of Payment, and the undersigned hereby irrevocably agree that all claims in respect of such action or proceeding may be heard and determined in such Connecticut State court or such Federal court. The undersigned hereby irrevocably waive, to the fullest extent they may effectively do so, the defense of an inconvenient forum to the maintenance of such action or proceeding. With respect to the undersigned, Maker hereby irrevocably consents to the service of copies of any summons and complaint and any other process which may be served in any such action or proceeding by certified mail, return receipt requested, or by delivering a copy of such process to Maker at the address first set forth above.

### 3.5    PARTIES IN INTEREST

This Note shall bind Maker and its successors and assigns. This Note shall not be assigned or transferred by Payee without the express prior written consent of Maker, except by will or, in default thereof, by operation of law. This Guaranty binds the Guarantors and their respective heirs, successors and assignees. The Guaranty may not be assigned or transferred by Guarantors without the express written consent of Payee.

### 3.6    SECTION HEADINGS, CONSTRUCTION

The headings of Sections in this Note are provided for convenience only and will not affect its construction or interpretation. All references to "Section" or "Sections" refer to the corresponding Section or Sections of this Note unless otherwise specified.

All words used in this Note will be construed to be of such gender or number as the circumstances require. Unless otherwise expressly provided, the words "hereof" and "hereunder"

and similar references refer to this Note in its entirety and not to any specific section or subsection hereof.

[*signature page to follow*]

IN WITNESS WHEREOF, Maker has executed and delivered this Note as of the date first stated above.

**DENTAL EXCELLENCE OF BLUE BELL**
By:  Dr. Kenneth B. Siegel


By:_____
Name: **Dr. Kenneth B. Siegel**
Title:  **Authorized Signatory**



STATE OF CONNECTICUT )

                 ) SS.:

COUNTY OF FAIRFIELD    )

        On the    day of _____, 2007, before me personally came **Dr. Kenneth B. Siegel**, to me known, who, being by me duly sworn, did depose and say that he is the **Authorized Signatory** of **DENTAL EXCELLENCE OF BLUE BELL,** which executed the above agreement; and that they acknowledged to me that he executed the same in their capacity, and that by his signatures on the instrument, the entity for which the individual acted, executed the instrument.


                                    _____
                                      Notary Public

**THE UNDERSIGNED (HERETOFORE REFERRED TO AS THE GUARANTORS) HEREBY IRREVOCABLY GUARANTEE THE REPAYMENT OF THE LOAN AMOUNT AND INTEREST DUE UNDER THE PROVISIONS OF THIS NOTE AND DO NOT PERSONALLY GUARANTEE ANY OTHER PROMISES MADE IN CONNECTION WITH THE LOAN UNDER THE PROVISIONS OF THIS NOTE.**

**DR. KENNETH B. SIEGEL**

_____

Dr. Kenneth B. Siegel, Individually and Personally

**CINDY SIEGEL**

_____

Cindy Siegel, Individually and Personally

STATE OF CONNECTICUT )

                 ) SS.:

COUNTY OF FAIRFIELD    )

          On the    day of _____, 2007, before me, the undersigned, a Notary Public in and for said state, personally appeared **Dr. Kenneth B. Siegel**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within agreement and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____

Notary Public

          On the    day of _____, 2007, before me, the undersigned, a Notary Public in and for said state, personally appeared **Cindy Siegel**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within agreement and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

# EXHIBIT "D"

# PROMISSORY NOTE SENT BY YABLON ON OCTOBER 19, 2007

## NEGOTIABLE PROMISSORY NOTE

USD $617,240.50                                                    *As of* **March 10, 2007**

**FOR VALUE RECEIVED, DENTAL EXCELLENCE OF BLUE BELL,** having an address of 706 Dekalb Pike Village Square, Blue Bell, Pennsylvania 19422 ("*Maker*"), promises to pay to **PAUL and JILL YABLON**, individuals having an address of 140 Parsonage Road, Greenwich, CT 06830 ("*Payee*"), in lawful money of the United States of America, the principal sum of Six Hundred and Seventeen Thousand Two Hundred and Forty Dollars and Fifty Cents ($617,240.50), together with interest accruing from the date hereof, accrued upon the unpaid principal balance at a rate of ten percent (10%) per annum, in the manner provided below (the "*Loan Amount*"). All principal and interest on this Note shall be payable in full by **January 1, 2018** (the "*Maturity Date*") or earlier, as hereinafter specified. Interest shall be calculated on the basis of a year of 365 days, and charged for the actual number of days elapsed. This Note is entered into in consideration of the execution of the Loan Agreement between the parties as of even date, a copy of which is attached hereto as Exhibit "A" and made part of this Note.

1.    PAYMENTS

      1.1    PRINCIPAL AND INTEREST

Principal Interest shall be paid as follows: The Loan shall be repaid as follows: Interest only on unpaid Principal in the initial amount of Six Hundred and Seventeen Thousand Two Hundred and Forty Dollars and Fifty Cents ($617,240.50) shall be payable in one hundred twenty (120) equal monthly installments in each twelve (12) month period beginning on January 1, 2008 and thereafter on the 1st day of each calendar month with the last payment being made payable on January 1, 2018. Interest shall accrue monthly at the rate of ten percent (10%) per annum on the unpaid principal balance of this Note at each monthly repayment date. Payments towards reducing the Principal may be made at any time prior to January 1, 2018 by paying monies in addition to the monthly interest due on any given repayment date, provided, however, the Principal must be fully repaid by the January 1, 2018.

"*Business Day*" means any day other than a Saturday, Sunday or on any other day on which commercial banks are required or authorized to be closed in Connecticut.

      1.2    MANNER OF PAYMENT

All payments of principal and interest on this Note shall be made by check or in such other manner as Payee shall designate to Maker in writing. If any payment of principal or interest on this Note is due on a day which is not a Business Day, such payment shall be due on the next succeeding Business Day.

      1.3    PREPAYMENT

Maker may, without premium or penalty, at any time and from time to time, prepay all or any portion of the outstanding principal balance due under this Note, provided that each such prepayment is accompanied by accrued interest on the amount of principal prepaid calculated to the date of such prepayment. Any partial prepayments shall be applied to installments of principal and interest in inverse order of their maturity.

### 1.4    SECURITY

This Note is secured by a certain second mortgage ("*Mortgage*") made by Maker to Payee on the property known 821 Firethorn Circle, Dresher, PA  19025, situated in the county of Montgomery, State of Pennsylvania, and being more particularly described in said Mortgage (the "*Premises*"). All of the covenants, terms, conditions and agreements contained in said Mortgage are hereby made a part of this instrument.  The Mortgage shall be recorded as of the date of execution of this instrument.

## 2.    DEFAULTS

### 2.1    EVENTS OF DEFAULT

The occurrence of any one or more of the following events with respect to the Maker shall constitute an event of default hereunder ("*Event of Default*"):

(a)    At the option of the Payee, if Maker shall provide written notice to Payee within five (5) days of when a payment of principal and/or interest is due stating why Maker cannot make such payment, or Maker fails to pay when due any payment of principal or interest on this Note and such failure continues for three (3) days.

(b)    If, pursuant to or within the meaning of the United States Bankruptcy Code or any other federal or state law relating to insolvency or relief of debtors (a "*Bankruptcy Law*"), Maker shall (i) commence a voluntary case or proceeding; (ii) consent to the entry of an order for relief against it in an involuntary case; (iii) consent to the appointment of a trustee, receiver, assignee, liquidator or similar official; (iv) make an assignment for the benefit of its creditors; or (v) admit in writing its inability to pay its debts as they become due.

(c)    If a court of competent jurisdiction enters an order or decree under any Bankruptcy Law that (i) is for relief against Maker in an involuntary case, (ii) appoints a trustee, receiver, assignee, liquidator or similar official for Maker or substantially all of Maker's properties, or (iii) orders the liquidation of Maker, and in each case the order or decree is not dismissed within 90 days.

(d)    Any violation by Maker of the "Inspection of Records" or "Expense Restrictions" sections of the Loan Agreement.

### 2.2    REMEDIES

Upon the occurrence of an Event of Default hereunder (unless all Events of Default have been cured or waived by Payee in writing), Payee may, at its option, (i) by written notice to Maker, declare the entire unpaid principal balance of this Note, together with all accrued interest thereon, immediately due and payable regardless of any prior forbearance, (ii) exercise any and all rights and remedies available to it under applicable law, including, without limitation, the right to collect from Maker all sums due under this Note. Maker shall pay all reasonable costs and expenses incurred by or on behalf of Payee in connection with Payee's exercise of any or all of its rights and remedies under this Note, including, without limitation, reasonable attorneys' fees; (iii) in respect of any month of an occurrence of an Event of Default, Payee shall have the right to ask for any additional financial information, including, but not limited to, both the financial information of Maker and personal information of Kenneth B. Siegel and Cindy Siegel, including but not limited to, P&L reports, Weekly Dental Genius Monitor, reports of cash flow and balance sheet information for Borrower, as well as copies of all major credit card statements, including, but not limited to, American Express Card; and (iv) if such Event of Default shall continue for a period of three (3) consecutive months, Maker agrees to immediately appoint Payee as receiver, without bond, over all assets and expenses of Maker for purposes of reducing expenses to allow Maker to make timely payments as provided herein.

3.     MISCELLANEOUS

3.1     WAIVER

The rights and remedies of Payee under this Note shall be cumulative and not alternative. No waiver by Payee of any right or remedy under this Note shall be effective unless in writing signed by Payee. Neither the failure nor any delay in exercising any right, power or privilege under this Note will operate as a waiver of such right, power or privilege and no single or partial exercise of any such right, power or privilege by Payee will preclude any other or further exercise of such right, power or privilege or the exercise of any other right, power or privilege. To the maximum extent permitted by applicable law, (a) no claim or right of Payee arising out of this Note can be discharged by Payee, in whole or in part, by a waiver or renunciation of the claim or right unless in a writing, signed by Payee; (b) no waiver that may be given by Payee will be applicable except in the specific instance for which it is given; and (c) no notice to or demand on Maker will be deemed to be a waiver of any obligation of Maker or of the right of Payee to take further action without notice or demand as provided in this Note.  Maker hereby waives presentment, demand, protest and notice of dishonor and protest.

3.2     NOTICES

All notices, requests, demands and other communications hereunder shall be made in writing and shall be deemed to have been given if delivered by electronic mail, hand or by facsimile with a confirmation copy mailed first class registered mail, return receipt requested, postage and registry fees prepaid, to the parties of this Note at the addresses first set forth above.  Any address may be changed by written notice to the other party.

3.3    SEVERABILITY

If any provision in this Note is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Note will remain in full force and effect. Any provision of this Note held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

### 3.4    GOVERNING LAW AND CONSENT TO JURISDICTION

This Guaranty is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the State of Connecticut (without regard to conflicts of laws principles) and shall be in all respects governed, construed, applied and enforced in accordance with the laws of the State of Connecticut. No defense given or allowed by the laws of any other state or country shall be interposed in any action or proceeding hereon unless such defense is also given or allowed by the laws of the State of Connecticut. The undersigned agrees that this Guaranty is, and is intended to be, an instrument for the payment of money only. The undersigned hereby irrevocably submit to the jurisdiction of any Connecticut State or Federal court, City of Greenwich, Fairfield County in any action or proceeding arising out of or relating to this Note or Guaranty of Payment, and the undersigned hereby irrevocably agree that all claims in respect of such action or proceeding may be heard and determined in such Connecticut State court or such Federal court. The undersigned hereby irrevocably waive, to the fullest extent they may effectively do so, the defense of an inconvenient forum to the maintenance of such action or proceeding. With respect to the undersigned, Maker hereby irrevocably consents to the service of copies of any summons and complaint and any other process which may be served in any such action or proceeding by certified mail, return receipt requested, or by delivering a copy of such process to Maker at the address first set forth above.

### 3.5    PARTIES IN INTEREST

This Note shall bind Maker and its successors and assigns. This Note shall not be assigned or transferred by Payee without the express prior written consent of Maker, except by will or, in default thereof, by operation of law. This Guaranty binds the Guarantors and their respective heirs, successors and assignees. The Guaranty may not be assigned or transferred by Guarantors without the express written consent of Payee.

### 3.6    SECTION HEADINGS, CONSTRUCTION

The headings of Sections in this Note are provided for convenience only and will not affect its construction or interpretation. All references to "Section" or "Sections" refer to the corresponding Section or Sections of this Note unless otherwise specified.

All words used in this Note will be construed to be of such gender or number as the circumstances require. Unless otherwise expressly provided, the words "hereof" and "hereunder"

and similar references refer to this Note in its entirety and not to any specific section or subsection hereof.

[*signature page to follow*]

IN WITNESS WHEREOF, Maker has executed and delivered this Note as of the date first stated above.

**DENTAL EXCELLENCE OF BLUE BELL**
By:  Dr. Kenneth B. Siegel


By:_____
Name: **Dr. Kenneth B. Siegel**
Title:  **Authorized Signatory**



COMMONWEALTH OF PENNSYLVANIA)

) SS.:

COUNTY OF _____        )


      On the    day of _____, 2007, before me personally came **Dr. Kenneth B. Siegel**, to me known, who, being by me duly sworn, did depose and say that he is the **Authorized Signatory** of **DENTAL EXCELLENCE OF BLUE BELL**, which executed the above agreement; and that they acknowledged to me that he executed the same in their capacity, and that by his signatures on the instrument, the entity for which the individual acted, executed the instrument.


_____
Notary Public

**THE UNDERSIGNED (HERETOFORE REFERRED TO AS THE GUARANTORS) HEREBY IRREVOCABLY GUARANTEE THE REPAYMENT OF THE LOAN AMOUNT AND INTEREST DUE UNDER THE PROVISIONS OF THIS NOTE AND DO NOT PERSONALLY GUARANTEE ANY OTHER PROMISES MADE IN CONNECTION WITH THE LOAN UNDER THE PROVISIONS OF THIS NOTE.**

**DR. KENNETH B. SIEGEL**

_____
**Dr. Kenneth B. Siegel, Individually and Personally**

**CINDY SIEGEL**

_____
**Cindy Siegel, Individually and Personally**

COMMONWEALTH OF PENNSYLVANIA)

                           ) SS.:

COUNTY OF _____ )

            On the ____ day of _____, 2007, before me, the undersigned, a Notary Public in and for said state, personally appeared **Dr. Kenneth B. Siegel**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within agreement and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

                                        _____
                                        Notary Public

            On the ____ day of _____, 2007, before me, the undersigned, a Notary Public in and for said state, personally appeared **Cindy Siegel**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within agreement and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

# EXHIBIT "E"

# PROMISSORY NOTE SENT BY SIEGEL ON OCTOBER 23, 2007

## NEGOTIABLE PROMISSORY NOTE

USD $583,985.50                                      *As of* **April 1, 2007**

**FOR VALUE RECEIVED, DENTAL EXCELLENCE OF BLUE BELL**, having an address of 706 Dekalb Pike Village Square, Blue Bell, Pennsylvania 19422 ("*Maker*"), promises to pay to **PAUL and JILL YABLON**, individuals having an address of 140 Parsonage Road, Greenwich, CT 06830 ("*Payee*"), in lawful money of the United States of America, the principal sum of Five Hundred and Eighty Three Thousand Nine Hundred and Eight Five Dollars and Fifty Cents ($583,985.50), together with interest accruing from the date hereof, accrued upon the unpaid principal balance at the rate of 4.7% per annum,, in the manner provided below (the "*Loan Amount*"). All principal and interest on this Note shall be payable in full by **January 1, 2018** (the "*Maturity Date*") or earlier, as hereinafter specified. Interest shall be calculated on the basis of a year of 365 days, and charged for the actual number of days elapsed.

1.     PAYMENTS

    1.1    PRINCIPAL AND INTEREST

Principal Interest shall be paid as follows: The Loan shall be repaid as follows: Interest only on unpaid Principal in the initial amount of Five Hundred and Eighty Three Thousand Nine Hundred and Eight Five Dollars and Fifty Cents ($583,985.50), shall be payable in one hundred twenty (120) equal monthly installments in each twelve (12) month period beginning on November 1, 2007 and thereafter on the 1st day of each calendar month with the last payment being made payable on January 1, 2018. Interest shall accrue monthly at the rate of ten percent (10%) per annum on the unpaid principal balance of this Note at each monthly repayment date. Payments towards reducing the Principal may be made at any time prior to January 1, 2018 by paying monies in addition to the monthly interest due on any given repayment date, provided, however, the Principal must be fully repaid by the January 1, 2018.

"*Business Day*" means any day other than a Saturday, Sunday or on any other day on which commercial banks are required or authorized to be closed in Pennsylvania.

### 1.2    MANNER OF PAYMENT

All payments of principal and interest on this Note shall be made by check or in such other manner as Payee shall designate to Maker in writing. If any payment of principal or interest on this Note is due on a day which is not a Business Day, such payment shall be due on the next succeeding Business Day.

### 1.3    PREPAYMENT

Maker may, without premium or penalty, at any time and from time to time, prepay all or any portion of the outstanding principal balance due under this Note, provided that each such prepayment is accompanied by accrued interest on the amount of principal prepaid calculated to the date of such prepayment. Any partial prepayments shall be applied to installments of principal and interest in inverse order of their maturity.

## 2.    DEFAULTS

### 2.1    EVENTS OF DEFAULT

The occurrence of any one or more of the following events with respect to the Maker shall constitute an event of default hereunder ("*Event of Default*"):

(a)    At the option of the Payee, if Maker shall provide written notice to Payee within five (5) days of when a payment of principal and/or interest is due stating why Maker cannot make such payment, or Maker fails to pay when due any payment of principal or interest on this Note and such failure continues for three (3) days.

(b)    If, pursuant to or within the meaning of the United States Bankruptcy Code or any other federal or state law relating to insolvency or relief of debtors (a "*Bankruptcy Law*"), Maker shall (i) commence a voluntary case or proceeding; (ii) consent to the entry of an order for relief

against it in an involuntary case; (iii) consent to the appointment of a trustee, receiver, assignee, liquidator or similar official; (iv) make an assignment for the benefit of its creditors; or (v) admit in writing its inability to pay its debts as they become due.

        (c)    If a court of competent jurisdiction enters an order or decree under any Bankruptcy Law that (i) is for relief against Maker in an involuntary case, (ii) appoints a trustee, receiver, assignee, liquidator or similar official for Maker or substantially all of Maker's properties, or (iii) orders the liquidation of Maker, and in each case the order or decree is not dismissed within 90 days.

### 2.2   REMEDIES

Upon the occurrence of an Event of Default hereunder (unless all Events of Default have been cured or waived by Payee in writing), Payee may, at its option, (i) by written notice to Maker, declare the entire unpaid principal balance of this Note, together with all accrued interest thereon, immediately due and payable regardless of any prior forbearance, (ii) exercise any and all rights and remedies available to it under applicable law, including, without limitation, the right to collect from Maker all sums due under this Note.

### 3.   MISCELLANEOUS

### 3.1   WAIVER

The rights and remedies of Payee under this Note shall be cumulative and not alternative. No waiver by Payee of any right or remedy under this Note shall be effective unless in writing signed by Payee. Neither the failure nor any delay in exercising any right, power or privilege under this Note will operate as a waiver of such right, power or privilege and no single or partial exercise of any such right, power or privilege by Payee will preclude any other or further exercise of such right, power or privilege or the exercise of any other right, power or privilege. To the maximum extent permitted by applicable law, (a) no claim or right of Payee arising out of this Note can be discharged by Payee, in whole or in part, by a waiver or renunciation of the claim or right unless in a writing, signed by Payee; (b) no waiver that may be given by Payee will be applicable except in the specific instance for which it is given; and (c) no notice to or demand on Maker will be deemed

to be a waiver of any obligation of Maker or of the right of Payee to take further action without notice or demand as provided in this Note. Maker hereby waives presentment, demand, protest and notice of dishonor and protest.

### 3.2   NOTICES

All notices, requests, demands and other communications hereunder shall be made in writing and shall be deemed to have been given if delivered by hand or by facsimile with a confirmation copy mailed first class registered mail, return receipt requested, postage and registry fees prepaid, to the parties of this Note at the addresses first set forth above. Any address may be changed by written notice to the other party.

### 3.3   SEVERABILITY

If any provision in this Note is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Note will remain in full force and effect. Any provision of this Note held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

### 3.4   GOVERNING LAW AND CONSENT TO JURISDICTION

This Note is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the State of Pennsylvania (without regard to conflicts of laws principles) and shall be in all respects governed, construed, applied and enforced in accordance with the laws of the State of Pennsylvania. No defense given or allowed by the laws of any other state or country shall be interposed in any action or proceeding hereon unless such defense is also given or allowed by the laws of the State of Pennsylvania. The undersigned agrees that this Guaranty is, and is intended to be, an instrument for the payment of money only. The undersigned hereby irrevocably submit to the jurisdiction of any Pennsylvania State or Federal court, Montgomery County in any action or proceeding arising out of or relating to this Note or Guaranty of Payment, and the undersigned hereby irrevocably agree that all claims in respect of such action or proceeding may be heard and determined in such Pennsylvania State court or such Federal court. The undersigned hereby irrevocably waive, to the fullest extent they may effectively do so, the defense of an inconvenient forum to the maintenance of such action or

proceeding. With respect to the undersigned, Maker hereby irrevocably consents to the service of copies of any summons and complaint and any other process which may be served in any such action or proceeding by certified mail, return receipt requested, or by delivering a copy of such process to Maker at the address first set forth above.

### 3.5    PARTIES IN INTEREST

This Note shall bind Maker and its successors and assigns.  This Note shall not be assigned or transferred by Payee without the express prior written consent of Maker, except by will or, in default thereof, by operation of law. This Note binds the Guarantors and their respective heirs, successors and assignees.  The Note may not be assigned or transferred by Guarantors without the express written consent of Payee.

### 3.6    SECTION HEADINGS, CONSTRUCTION

The headings of Sections in this Note are provided for convenience only and will not affect its construction or interpretation.  All references to "Section" or "Sections" refer to the corresponding Section or Sections of this Note unless otherwise specified.

All words used in this Note will be construed to be of such gender or number as the circumstances require. Unless otherwise expressly provided, the words "hereof" and "hereunder" and similar references refer to this Note in its entirety and not to any specific section or subsection hereof.

*[signature page to follow]*

IN WITNESS WHEREOF, Maker has executed and delivered this Note as of the date first stated above.

**DENTAL EXCELLENCE OF BLUE BELL**
By: Dr. Kenneth B. Siegel


By:_____
Name: **Dr. Kenneth B. Siegel**
Title:  **Authorized Signatory**



COMMONWEALTH OF PENNSYLVANIA)

                                                    ) SS.:

COUNTY OF _____        )



On the    day of _____, 2007, before me personally came **Dr. Kenneth B. Siegel**, to me known, who, being by me duly sworn, did depose and say that he is the **Authorized Signatory** of **DENTAL EXCELLENCE OF BLUE BELL**, which executed the above agreement; and that they acknowledged to me that he executed the same in their capacity, and that by his signatures on the instrument, the entity for which the individual acted, executed the instrument.


                                                    _____
                                                    Notary Public

DAVE

## DO WE INCLUDE THIS LAST PAGE?

**THE UNDERSIGNED (HERETOFORE REFERRED TO AS THE GUARANTORS) HEREBY IRREVOCABLY GUARANTEE THE REPAYMENT OF THE LOAN AMOUNT AND INTEREST DUE UNDER THE PROVISIONS OF THIS NOTE AND DO NOT PERSONALLY GUARANTEE ANY OTHER PROMISES MADE IN CONNECTION WITH THE LOAN UNDER THE PROVISIONS OF THIS NOTE.**

**DR. KENNETH B. SIEGEL**

_____

**Dr. Kenneth B. Siegel, Individually and Personally**

**CINDY SIEGEL**

_____

**Cindy Siegel, Individually and Personally**

COMMONWEALTH OF PENNSYLVANIA)

                        ) SS.:

COUNTY OF _____      )

           On the    day of _____, 2007, before me, the undersigned, a Notary Public in and for said state, personally appeared **Dr. Kenneth B. Siegel**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within agreement and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____

Notary Public