UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
PAUL YABLON AND JILL YABLON,

                Plaintiffs,

                - against -

DENTAL EXCELLENCE OF BLUE BELL AND
KENNETH B. SIEGEL AND CINDY SIEGEL,
INDIVIDUALLY,

                Defendants.
------------------------------------------------------------------- x

07 CV 11040

(DLC)

# PLAINTIFFS' MEMORANDUM OF LAW
# IN OPPOSITION OF DEFENDANT'S MOTION TO
# DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2)

**SACK & SACK, ESQS.**
Jonathan S. Sack, Esq. (JS 1835)
110 East 59th Street, 19th Floor
New York, New York 10022-2050
(212) 702-9000

Attorneys for Plaintiffs

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT** .................................................................................................................. 1

**STATEMENT OF FACTS** ........................................................................................................... 7

**ARGUMENT** ................................................................................................................................ 7

    **A.**     **STANDARD FOR MOTION TO DISMISS NOT MET** ................................................................. 7

    **B.**     **PLAINTIFFS HAVE PERSONAL JURISDICTION OVER DEFENDANTS IN THIS DISTRICT** ....................................................................................... 8

**CONCLUSION** ........................................................................................................................ 12

## PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT

Plaintiffs, Paul Yablon and Jill Yablon ("*Plaintiff*") by their undersigned counsel, submits this Memorandum of Law in Opposition to Defendants' Motion to Dismiss seeking denial of Defendants' motion in its entirety. This motion is merely Defendants' attempt to delay, deny, and obfuscate the rightful entitlements of Plaintiffs' to be repaid on loans they made to Defendants at the Defendants' behest.

In their Motion, Defendants retell an inaccurate rendition of the facts that led up to this dispute among the parties concerning the repayment of several loans. Over the course of several years, Defendants Dental Excellence of Blue Bell, Kenneth B. Siegel and Cindy Siegel ("*Defendants*") incurred severed hundreds of thousands of dollars in debt. To dig themselves out of debt, Defendants (the Siegels) desperately sought to borrow money from the Plaintiffs (the Yablons) on terms convenient only to the Defendants. (Jill Yablon is Kenneth B. Siegel's sister.) This M.O. is repeated in Defendants' motion: After realizing their hole was only getting deeper, Defendants engaged Jonathan Sack, an attorney in New York County (under this Court's jurisdiction), to be their agent and representative to aggressively negotiate down some of their mounting debts. Now, after they received the benefit, guidance and advice of a New York attorney and his contacts, Defendants refuse to be subject to the very same jurisdiction in which they sought assistance.

Defendants' motion correctly points out that Plaintiffs offered to help Defendants with certain debts they incurred. That is where the accuracies end.

It is undisputed that Plaintiffs sent funds to Jonathan Sack for purposes of him negotiating down their debts and, then, paying some of Defendants' creditors. However, unlike the picture Defendants painted in their motion, Mr. Sack's involvement was not limited to

1

merely a "disbursement agent" who made two innocuous payments to creditors.

In actuality, over many months during 2006 through 2007, Defendants themselves engaged Mr. Sack to be their "go to" agent regarding all aspects of their mounting debts– from dealing with creditor threats, to negotiating down debts, to reviewing settlement agreements, to advising on payment and other procedures, to paying down debts, to finalizing release procedures, and brokering the terms of a promissory note between the parties.

Despite Defendants' contentions, Mr. Sack's involvement was not limited to merely "writing checks."

The sworn statement of Defendant Cindy Siegel mentions that Plaintiffs hired "an attorney and an accountant in Philadelphia to analyze the business and consult[]" with the Plaintiffs concerning reducing the debt. (Siegel Aff., ¶ 5.) According to Ms. Siegel, the *Philadelphia* attorney advised them to "negotiate the debt down and then pay it off." (Id.) Amazingly, Ms. Siegel omits a most relevant and undeniable fact – it was Jonathan Sack in New York who negotiated down the debt only after their local counsel exited the picture. In fact, the purported Philadelphia attorney has not participated whatsoever, in negotiating down Defendants' debt. Ms. Siegel conveniently excludes from her affidavit that Jonathan Sack was the one who, over several months, negotiated down the myriad debts. Instead, the only mention Ms. Siegel makes of Jonathan Sack is that "the Yablons decided to have their attorney, Jonathan Sack, remit the funds to the creditors." (Siegel Aff., ¶ 6.) This statement could not be further from the truth and is in direct contravention to undisputed written documentation.

Attached with this Opposition Motion is the affirmation of Jonathan Sack, containing at least 50 documents, email correspondence, faxes and letters, between himself and the Defendants (not to mention the dozens of telephone conferences) that concerned more than just the mere

2

remittance of funds. Cursory examination of the documents clearly establishes that the Defendants fully availed themselves of the services of Mr. Sack within this jurisdiction to negotiate repayment terms with their creditors.

A sampling of the documentation and correspondence is as follows, and more fully set forth in Exhibit "A" of Jonathan Sack's Affirmation.

1. 9/12/06 - Letter from Cindy Siegel to Jonathan Sack: **"We are still getting endless phone calls but are now receiving letters."**

2. 10/16/06 – Fax from Ken Siegel to Jonathan Sack: **"Paul [Yablon] was planning on laying out the $10,000 payment for me . . . ken."**

3. 10/7/06 – Fax from Defendants to Jonathan Sack: **"Jon [Sack], we just got this [Judgment] hand delivered to us. . ."**

4. 10/18/06 – Email from Ken Siegel to Jonathan Sack: **"Jon, I got another threatening call from Commerce on my cell phone . . . he keeps calling and threatening. . . Did you get all of the information that you need . . . that I faxed yesterday. Kenneth B. Siegel, D.M.D."**

5. 10/19/06 – Email from Ken Siegel to Jonathan Sack: **"Jon. . . I believe our prior balance is no more than $600. . . I'll agree to it if you want me to just get rid of it. . . It's not with you spending a lot of time on. If you feel that it's the best that we can do then that's what I'll do. Let me know."**

3

6. On October 19, 2006, there was a series of back-and-forth emails from Ken Siegel to Jonathan Sack concerning Dr. Siegel's desire for Jonathan Sack to settle a debt incurred in respect of ADT's services.

7. 10/19/06 - Letter from Jonathan Sack to Creditor, ADT, on behalf of Defendants: **"Dear Ms. Borden: We represent Dental Excellence of Blue Bell and Kenneth B. Siegel concerning ADT . . Please call me to discuss. . . Jonathan Sack."**

8. 10/19/06 - Letter from Jonathan Sack to Creditor, H.A. Steene Industries, Inc., on behalf of Defendants: **"Dear Ms. Pollins: This firm represent Dental Excellence of Blue Bell and Kenneth B. Siegel. Reference is made to the demand made upon my client . . As you may be aware, my client intends to raise several defenses in connection with this matter with you in greater detail so that we may, in good faith, reach a mutually-acceptable compromise and resolution without resort to litigation. . . Jonathan Sack."**

9. 10/19/06 - Letter from Jonathan Sack to Creditor, Commerce, on behalf of Defendants: **"Dear Ms. Dilcie: We represent Dental Excellence of Blue Bell… Please call me to discuss… Jonathan Sack."**

10. 10/19/06 - Letter from Jonathan Sack to Creditor, Aurum Ceramic Dental Laboratory, on behalf of Defendants: **"Dear Dr. Steele: I write to confirm the settlement of my client and Aurum Ceramic Dental Laboratory for the total amount of $17,500. I have set up a wire transfer to your designated account for the first installment of $10,000."**

11.   10/19/06 - Letter from Jonathan Sack to Creditor, Consumer Loan Collections-Loan No. 1801125252, on behalf of Defendants:  **"Dear Mr. Brosious: I represent Kenneth B. Siegel in connection with the referenced loan.  I have returned your call and I await hearing from you so we may discuss this matter… Jonathan Sack."**

12.   11/2/06 – Email from Ken Siegel to Jonathan Sack: **"Jon… We got two certified letters today from Commerce… Cindy will fax the documents, but here is the gist… We need $6103.72 to cure default and have only 30 days before we lose the home at a Sheriff's Sale.  IS IT TIME TO PANIC? ARE THEY BLUFFING? IT IS A LITTLE DISTURBING [T]HAT THEY ARE LOOKING TO FORECLOSE? IS IT JUST PAR FOR THE COURSE? PLEASE LET ME KNOW."**

13.   11/29/06 - Email exchange where Jonathan Sack emailed Ken and Cindy Siegel among others, **"I was able to get Creditors Interchange to accept 50% which is a savings of $36,616.50…  Please advise how we should proceed"** to which Ken Siegel replied, **"Awesome. You're the man.  We are currently paying off Discover as we speak.  They are sending FedEx to pick up the check. Ken."**

14.   1/10/07 - Fax to Jonathan Sack from Ken Siegel:  **"We have been receiving harassing calls re: this account.  We receive a writeoff… They never gave us proof."**

15.   1/19/07 - Fax from Ken Siegel to Jonathan Sack:  **"Jonathan, we just received this judgment by regular mail… Please call when you get this if possible. 215-498-5991. Ken."**

16. On March 12, 2007, Jonathan Sack forwarded to Jack M. Seitz, Esq, Attorney for Commerce Bank, a settlement agreement concerning one of the Defendants' debts. That settlement agreement provides that all notices be sent to the Defendants with a copy to Jonathan Sack in New York.

17. On March 20, 2007, Jonathan Sack forwarded to Mr. Seitz a check for $100,000 from his attorney's escrow IOLA account.

18. On April 5, 2007, Jonathan Sack forwarded to Mr. Seitz for $370,000 from his attorney's escrow IOLA account.

19. 7/19/07 - Ken Siegel faxed to Jonathan Sack another collection agency letter with the following note: **"Jonathan, we got this from a new collection agency for Citibank. Please let me know if I need to do something."**

In addition, Defendants retell a sordid tale about a negotiation of a promissory note that was to memorialize the terms between Plaintiffs and Defendants concerning repayment terms of a series of loans made by Plaintiffs to Defendants. The Defendants recall that the "negotiations were by e-mail, regular mail and telephone calls between Connecticut and Pennsylvania," when in actuality these papers were drafted solely by Mr. Sack in New York. (Def. Mem., p. 1.)

The aforementioned certainly goes beyond the pale of "minimum contacts." Accordingly, Defendants have availed themselves of the jurisdiction of this Court and, thus, Defendants' Motion must be dismissed.

**STATEMENT OF FACTS**

Plaintiff respectfully refers the Court to the Complaint filed in this matter for a full rendition of Plaintiffs' allegations in its entirety. Plaintiffs, however, do refer to those facts in the Argument section below.

**ARGUMENT**

    A.    STANDARD FOR MOTION TO DISMISS NOT MET

It is more than well-established law, that "on a Motion to Dismiss, the <u>allegations in the complaint are accepted as true</u>." <u>Absalom Gonzalez-Jimenez v. United States of America</u>, 2000 U.S. Dist. LEXIS 14040 (S.D.N.Y. 2000), <u>citing</u>, <u>Cohen v. Koenig</u>, 25 F.3d 1168, 1172-73 (2d Cir. 1994). <u>See also</u>, <u>Kenneth Dash v. The Equitable Life Assurance Society of the United States and Ecuicor—Equitable HCA Corp.</u>, 753 F. Supp. 1062; 1990 U.S. Dist. LEXIS 17708; 59 FairEmpl. Prac. Cas. (BNA) 685 (E.D.N.Y. 1990). "In deciding a motion to dismiss, all reasonable inferences must be drawn in the plaintiff's favor." <u>Gant v. Wallingford Bd. of Educ.</u>, 69 F.3d 669, 673 (2d Cir. 1995); <u>Cosmas v. Hasset</u>, 886 F.2d 8, 11 (2d Cir. 1989). "It is well established that, at this stage of the litigation, plaintiff need only put forward *a prima facie showing of in personam jurisdiction*." <u>Abelman v. Scientia Corp.</u>, 1984 U.S. Dist. LEXIS 14825 (S.D.N.Y. 1984), <u>citing</u>, <u>Wisehart, Friou & Koch v. Hoover</u>, 473 F.SUpp. 945, 948 (S.D.N.Y. 1979).

In their motion, Defendants conveniently omit from their argument their significant contacts with their New York agent, Jonathan Sack, whom Defendants retained to negotiate mounting debts incurred by Defendants. This is surprising considering Defendants, almost on a daily basis would either fax, email or telephone Mr. Sack and in some instances plead with him to help them get creditors off their back. Mr. Sack sent many letters to several creditors seeking

7

to discuss the pay down of debt on behalf and at the behest of Defendants. Once Mr. Sack would successfully negotiate down a debt incurred by Defendants, he would satisfy those debts with monies provided to Mr. Sack in New York by Plaintiffs. Furthermore, Mr. Sack would assist Defendants with the settlement agreement with the creditors listing Mr. Sack as a person to be "noticed" in respect of any issues. In turn, Defendants agreed to repay those monies to Plaintiffs, which they failed to do and which is the 'center of gravity' of this lawsuit. Defendants' contacts in New York thus play a much larger role than Defendants account for and thus, preclude dismissal on a jurisdictional basis.

    **B.**    **PLAINTIFFS HAVE PERSONAL JURISDICTION OVER DEFENDANTS IN THIS DISTRICT**

As Defendants properly points out in its Motion, New York's long-arm statute provides that a court may exercise personal jurisdiction over any foreign defendant "who in person or through an agent . . . transacts any business within the state" from which the cause of action arises. NY CPLR § 302(a)(1). The Defendants further cite that "for a court to exercise jurisdiction under this provision, the claim must "arise from" the transaction of business within the state." Def. Mot, p.5, citing, Agency Rent A Car Sys. v. Grand Rent A Car Corp., 98 F.3d 25 (2d Cir. 1996). This statute permits jurisdiction over a non-domiciliary defendant.

To support long-arm jurisdiction, a plaintiff must demonstrate "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). Based upon the irrefutable documented contact Defendant had with Mr. Sack in New York, Defendants' arguments in their motion *support* personal jurisdiction over the Defendants rather than dismissal.

8

In their motion, Defendants address the two-step process in determining whether New York Courts can confer personal jurisdiction upon an out-of-state defendant:

> Step I:   Whether the out-of-state Defendant transacted business within New York State?  and
>
> Step II:  Whether the claim arises out of Defendants transactions within New York State?

Step I:  Defendants cite several instances where personal jurisdiction could not be conferred to establish the transaction of business in New York, none of which apply to the facts at bar.  Specifically, Defendants rightfully note that (1) New York Courts will establish jurisdiction if communications by Defendants "were related to some transaction that had its 'center of gravity' inside New York, into which a Defendant 'projected himself'" Def. Mem., p. 6, citing, Wilhemshaven Acquisition Corp. v. Asher, 810 F.Supp. 108, 112 (S.D.N.Y. 1993); (2) passive receipt of money in New York does not constitute sufficient grounds fro conferring personal jurisdiction.  Def. Mem., p. 6 – 7, citing, Associated Aviation Underwriters v. DAP Holding, N.V., 2003 WL 21277148 (S.D.N.Y. 2003).; and (3) unilateral conduct of the plaintiff does not serve to confer jurisdiction over an out-of-state defendant, Def. Mem. p. 7, citing, Hanson v. Denckla, 357 U.S. 235, 253 (1958).

Step II:  Even using Defendants' analysis in "Step II"; Plaintiffs properly exercise personal jurisdiction over Defendants.  Defendants note that, "A claim 'arises out of' a defendant's transaction of business in New York when there exists 'a substantial nexus' between the business

9

transacted and the cause of action sued upon." Def. Mem., p. 7, <u>citing</u>, <u>Rent A Car System, Inc.</u>, 98 F.3d at 31.

In addition, exercise of jurisdiction under New York's long-arm statute must be based on Defendants' "minimum contacts" with the state and must comport with "traditional notions of fair play and substantial justice" to satisfy the Due Process Clause. <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945). As Defendants point out, "in this regard, the defendants' contacts with New York cannot be 'random,' 'fortuitous,' or 'attenuated.'" Def. Mem., p. 8, <u>citing</u>, <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 480 (1985).

In examining the correspondence, contacts and assistance sought by Defendants in New York concerning the "transaction", in this case "the loans", the Defendants' contacts go well beyond the "minimum." As a general rule, in making the constitutional analysis, once a plaintiff has made a "threshold showing" of minimum contacts, the defendant must come forward with a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." <u>Wiwa v. Royal Dutch Petroleum Co.</u>, 226 F.3d 88, 2000 (2d Cir. 2000), <u>citing</u>, <u>Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.</u>, 84 F.3d 560, 568 (2d Cir. Vt. 1996).

Specifically, Defendants' overt and substantial dealings with Jonathan Sack to negotiate several debts over a period spanning 9 months is not "random", "fortuitous" or "attenuated." Def. Mem., p. 8. Their pleas, discussions, negotiations, faxes, emails, telephone calls and letters to Jonathan Sack goes way beyond the pale of a "disbursement agent." Furthermore, the negotiations by the New York agent of Defendants with several creditors who were paid from funds of the Plaintiffs most certainly gives rise to the contract between Plaintiff and Defendant. This, especially

where the Defendants agreed to repay Plaintiffs following the agents' negotiation of several Defendants' debts and the payment of those debts using funds supplied by Plaintiffs.

Unlike the contentions of the Defendants who claim that Mr. Sack's retention as agent to negotiate and pay-off Defendants' debts was "the plaintiffs' unilateral decision", Defendants made the same decision to retain Mr. Sack as their agent within this jurisdiction to negotiate their debts and utilize the services of this agent over a period of nine months.  Where was their "local PA Counsel" during this time?

According to well documented evidence, Mr. Sack's role as agent upon which jurisdiction can be conferred upon Defendants, is not through the "passive receipt of money" or merely a "payment processed by [a] New York bank" but rather as deliberate, calculated and purposeful availment by Defendants of the use and service of a New York lawyer to advise them and to negotiate their debts and pay them off using money supplied to that New York attorney by Plaintiffs as well as Defendants.  (See, Sack Aff., Ex. A)

In a further desperate argument, Defendants attempt to defeat personal jurisdiction by referring to at least two (2) different drafts of an unexecuted promissory note.  The parties failure to memorialize mutual terms of the monies loaned by Plaintiff to Defendants in a contract where the parties would also agree to confer jurisdiction to a particular venue cannot countenance the fact that indeed the circumstances, terms and conditions of those notes arose in New York and at the behest of Defendants themselves!

It is undisputable that the Defendants availed themselves of the jurisdiction of this Court in all respects of the 'center of gravity' of this matter - from dealing with creditor threats, to

negotiating down debts, to reviewing settlement agreements, to seeking advice on payment and other procedures, to paying down debts, to finalizing release procedures, and brokering the terms of a promissory note between the parties. Accordingly, this Court has personal jurisdiction over the Defendants, thereby warranting dismissal of this motion.

## CONCLUSION

For the reasons stated, this Honorable Court should deny Defendants' Motion in its entirety.

Dated: New York, New York
January 11, 2007

Respectfully submitted,

**SACK & SACK, ESQS.**

By:   /s/ Jonathan Sack
Jonathan Sack, Esq. (JS 1835)

110 East 59th Street, 19th Floor
New York, New York 10022-2050
Tel:   (212) 702-9000
Fax:   (212) 702-9702
Attorneys for Plaintiffs