IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **Paul Yablon and Jill Yablon,** | : | |
| | : | No. 07 CV 11040 (DLC) |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| **Dental Excellence of Blue Bell, et al.** | : | |
| | : | |
| Defendants. | : | |
| | : | |

**REPLY MEMORANDUM
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Defendants, Dental Excellence of Blue Bell ("DEBB"), Kenneth B. Siegel and Cindy Siegel, submit this Reply Memorandum in further support of their motion to dismiss this action for lack of personal jurisdiction.

    /s/Richard E. Miller
Richard E. Miller (RM 9280)
P.O. Box 191
Chadds Ford, PA 19317
(610)793-2032
(Admitted Pro Hac Vice)

Devindra Ramesh Tiwari Kissoon (DK 8130)
Cozen O'Connor
909 Third Avenue
New York, NY 10022
Telephone: 212.453.3829

Dated: January 24, 2008        Attorneys for Defendants

**TABLE OF CONTENTS**

                                                                                           **PAGE**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEGAL DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## INTRODUCTION

This action arises from an alleged verbal contract between Plaintiffs (Paul and Jill Yablon) and one or more of the Defendants, pursuant to which Plaintiffs allegedly loaned money to payoff certain business related debts of Defendants. Plaintiffs allege that one or more of the Defendants are obligated to pay back these funds pursuant to unspecified terms. The material issues raised by this lawsuit are whether a contract exists between the parties and, if so, the terms of that contract.[1] The relevant question regarding the jurisdictional issue raised by this motion is whether Plaintiffs' claim arises from business transacted in New York by any of the Defendants. As previously discussed in Defendants' initial memorandum of law, the analysis of the jurisdictional issue in a breach of contract case usually focuses on the location of the negotiations and/or the performance of the alleged contract.

As evidenced by the Verification of Cindy Siegel previously submitted to the Court, the unsuccessful negotiations between the parties had no nexus to New York, as they took place by mail, e-mail and telephone calls between Pennsylvania and Connecticut, and concluded with the parties ultimately failing to reach any agreement.[2] Nor is there any evidence that the alleged contract required Defendants make payments to Plaintiffs (or anyone else) in New York. There has been no evidence presented which establishes that the negotiations or performance of the

---

[1], Defendants' are not being coy in their characterization of this action. Even a cursory reading of the Complaint requires the conclusion that the elements of a contract have not been alleged. The Complaint does not allege that the parties agreed to any terms regarding the alleged loan(s), and admits that the parties did not agree to such terms. See Complaint at ¶¶16-19. Thus, Plaintiffs' characterization of their disbursement of funds as being pursuant to a "contract" is not supported by the allegations in the Complaint. Nevertheless, Plaintiffs' cause of action is grounded in contract.

[2] The issues the parties could not agree upon were material, including the obligors, the term, the interest rate and the type of security.

alleged contract took place in New York.  Nor has there been any evidence presented that a New York attorney (Jonathan Sack) acted as a "broker" with respect to these negotiations or that Defendants were otherwise involved with Mr. Sack in New York with respect to the negotiations or performance of the alleged contract.

Lacking any evidence that their claim arises from Defendants' transaction of business in New York, Plaintiffs have attempted to establish jurisdiction based upon business transactions which do not give rise to their claim.  Those transactions would be Mr. Sack's involvement with negotiations with certain creditors of one or more of the Defendants.[3]  Plaintiffs' claim clearly does not arise from these transactions, particularly since those transactions took place many months before the parties even began discussing the alleged contract.  See Supplemental Verification of Cindy Siegel attached as Exhibit "A".

Plaintiffs', in their Memorandum of Law, repeatedly set forth irrelevant factual allegations regarding negotiations with creditors of the Defendants and Mr. Sack, the New York attorney that represented Defendants in their negotiations with some of these creditors. Plaintiffs' evidence supporting these factual allegations is a stack of documents which establish that Mr. Sack was, in fact, communicating with Defendants and some of their creditors in an effort to negotiate certain debts.[4]  Defendants do not dispute that Mr. Sack acted as their counsel in this regard.  Contrary to Plaintiffs' disparaging comments, Defendants' dealings with Mr. Sack were not addressed in this motion because they have no relevance to the jurisdictional issue.

---

[3] Mr. Sack represented Defendants with respect to negotiations with certain creditors, and is now acting as the attorney of record for Plaintiffs in this action.

[4] These documents appear to be Mr. Sack's file from his representation of Defendants, and include several privileged communications between Mr. Sack and the Siegels.

2

Plaintiffs' claim does not arise from Mr. Sack's prior representation of Defendants, and Plaintiffs attempt to portray it as being relevant is, at a minimum, misleading.  The evidence submitted by Plaintiffs to establish a basis for personal jurisdiction is, therefore, equally irrelevant to the jurisdictional question.

In addition to the pages of irrelevant factual statements regarding negotiations with third party creditors, Plaintiffs slipped in a couple of arguably relevant factual allegations which, if supported by record evidence, could properly be considered by the Court in its jurisdictional analysis.  Sprinkled sporadically throughout Plaintiffs' Memorandum of Law are statements that Mr. Sack had some vague or unspecified involvement with the negotiations of the alleged contract.  To that end, Plaintiffs contend that Mr. Sack "brokered" the negotiations of the alleged contract, that Defendants engaged Mr. Sack to "broker the terms of the promissory note between the parties", and that Mr. Sack was the person that drafted **all** of the loan documents exchanged between the parties.  See Plaintiffs' Memorandum of Law ("Pltfs. Mem.") at pp.2, 6 and 11.

Unfortunately for Plaintiffs, these factual allegations are not supported by any evidence, and are refuted by the two Verifications submitted by Cindy Siegel.  Not one of the exhibits attached to Plaintiffs' Memorandum of Law has anything to do with the negotiations (or performance) of the alleged contract.  Plaintiffs clearly are attempting to mislead the Court by submitting a large volume of irrelevant documents and falsely declaring that such documents evidence Mr. Sack's "brokering" of negotiations between his former and current clients.  Simply put, statements in Plaintiffs' brief are not evidence, and Plaintiffs have failed to provide even a scintilla of evidence supporting these statements.  Accordingly, Plaintiffs have failed to meet their burden to prove that this action arises from any business transacted by Defendants in New

York.[5]

Finally, Defendants cannot ignore the blatant violations of the New York Code of Professional Conduct that are taking place on Plaintiffs' behalf.  Defendants' former lawyer is now representing Plaintiffs and utilizing his prior attorney-client relationship with Defendants as the basis for this Court to exercise jurisdiction over Defendants.  In addition, he has attached his file from his representation of Defendants, **including privileged attorney-client communications**, in an effort to benefit Plaintiffs.  It is inconceivable that he has not realized that he is ethically prohibited from representing any party in this case.  His actions constitute further reason for dismissing this lawsuit.  Defendants' motion, therefore, should be granted.

---

[5] Although Plaintiffs have failed to produce any evidence with respect to these statement, Defendants have provided a sworn statement refuting these allegations.  See Supplemental Verification of Cindy Siegel attached as Exhibit "A".

## **LEGAL DISCUSSION**

As discussed in Defendants' initial memorandum of law, pursuant to §302 of New York's long arm statute, specific personal jurisdiction exists if the claim at issue arises from the transaction of business within the state.[6]  See <u>Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.</u>, 98 F.3d 25, 29 (2nd Cir. 1996).  Accordingly, in order to establish that this Court has personal jurisdiction over Defendants, **Plaintiffs** must prove[7] that their breach of contract action arises from Defendants' transaction of business in New York.

   **1.   Plaintiffs Have Failed To Prove That Their Claim Arises
          From Defendants' Transaction Of Business In New York**

Plaintiffs contend that this Court has personal jurisdiction over Defendants based on Defendants' dealings with Jonathan Sack, which they describe as follows:

> In actuality, over many months during 2006 through 2007, Defendants themselves engaged Mr. Sack to be their "go to" agent regarding all aspects of their mounting debts– from dealing with creditor threats, to negotiating down debts, to reviewing settlement agreements, to advising on payment and other procedures, to paying down debts, to finalizing release procedures, and **brokering the terms of a promissory note between the parties.**

Pltfs. Mem. at p.2 (emphasis added).  In addition to negotiating with third party creditors, Plaintiffs further contend that Mr. Sack was the scrivener of all of the loan documents exchanged by the parties, which would include the draft sent by the Siegels to the Yablons (<u>see</u> Exhibit "E"

---

   [6] Section 302(a) of the CPLR states, in relevant part:

   As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary. . . . who in person or through an agent. . . . . . transacts any business within the state or contracts anywhere to supply goods or services in the state. . . . . .

   [7] Plaintiffs bear the burden of establishing that personal jurisdiction exists.  <u>Kahn Lucas Lancaster, Inc. v. Lark Intern. Ltd.</u>, 956 F.Supp. 1131, 1134 (S.D.N.Y. 1997).

to Defendants' initial memorandum of law):

> The Defendants recall that the "negotiations were by e-mail, regular mail and telephone calls between Connecticut and Pennsylvania," **when in actuality these papers were drafted solely by Mr. Sack in New York.**

Pltfs. Mem. at p.6 (emphasis added). Based on these alleged activities, Plaintiffs contend that the Court has personal jurisdiction over Defendants.

These factual allegations, even if true and supported by evidence, do not set forth sufficient contacts to justify jurisdiction over Defendants. Plaintiffs' cause of action is for breach of an alleged agreement that requires one or more of the Defendants to repay the funds disbursed by Plaintiffs pursuant to whatever terms were allegedly agreed upon. Plaintiffs' allegations regarding Mr. Sack's "brokering" of negotiations and drafting of loan documents, even if true and supported by evidence (which they are not), does not warrant a finding of jurisdiction because these allegations are extremely vague.

Plaintiffs do not allege (let alone prove) what actions Defendants engaged in with respect to the negotiations of the alleged contract which took place in New York or were directed to New York. They do not allege (let alone prove) what actions related to the alleged brokering of negotiations that Mr. Sack took in New York, and why such actions would be attributable to Defendants. Nor do Plaintiffs identify what loan documents they claim were drafted by Mr. Sack, or how his drafting of loan documents constitutes the transaction of business in New York by Defendants. Plaintiffs do not allege (let alone prove) that Defendants negotiated with Mr. Sack (in or outside of New York) with respect to the terms of the alleged contract. Plaintiffs do not allege (let alone prove) that such negotiations were in person or took place in New York. In short, Plaintiffs do not allege (let alone prove) a single instance in which Defendants

6

communicated with Mr. Sack (in or outside of New York) regarding the alleged contract that is the subject of this lawsuit.

Personal jurisdiction will not lie unless there exists 'a substantial nexus' between the business transacted and the cause of action sued upon." Agency Rent A Car System, Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 31 (2nd Cir. 1996). Plaintiffs' vague, conclusory, unsupported and rebutted factual allegation that Mr. Sack brokered negotiations, even if true, are insufficient to establish the substantial nexus required. The Court, however, need not determine the sufficiency of these alleged contacts for, as discussed below, Plaintiffs have failed to submit **any** evidence which substantiates these allegations.[8]

   2. **Plaintiffs' Evidence Does Not Establish That Defendants Negotiated Or Performed The Alleged Contract In New York**

Personal jurisdiction for a breach of contract claim of this nature is typically proven by evidence which establishes one or more of the following factors: (i) the defendant has an on-going contractual relationship with a New York corporation from which the lawsuit arises; (ii) the contract at issue in the lawsuit was negotiated and/or executed in New York, (iii) the defendant met with parties to the contract at issue in New York regarding their contractual relationship; (iv) the choice-of-law clause in the contract at issue applies New York law to any disputes arising under the contract; and (iv) the contract at issue requires the relevant parties to

---

[8] Each of these allegations is refuted in the Verification of Cindy Siegel attached to Defendants initial memorandum of law, and the Supplemental Verification of Cindy Siegel attached hereto as Exhibit "A". Mr. Sack did not broker any negotiations between the parties, and he did not prepare any loan documents on behalf of Defendants. Whether he drafted documents on behalf of Plaintiffs is not within Defendants' knowledge and cannot be attributed to Defendants for jurisdictional purposes. See Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-1240 (1958)("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.").

send payments into New York or subjects them to supervision by a New York entity.  Other factors may also be considered, and the ultimate determination is based on the totality of the circumstances.  Agency Rent A Car System, Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2nd Cir. 1996).

Applying these factors to the case at bar, Plaintiffs attempt to establish a basis for jurisdiction by alleging that Mr. Sack had some involvement with the contract negotiations and that  Defendants had dealings with Mr. Sack with respect to the contract negotiations.  Therefore, according to Plaintiffs, there must be jurisdiction over Defendants.  Plaintiffs' evidence, however, has nothing to do with the purported contract or its negotiation.

Plaintiffs' relevant factual allegations must be established by some semblance of evidence.  As the Court is well aware, allegations made in a legal brief or memorandum are not competent evidence.  Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 526 (2nd Cir. 1994) (allegations contained in memoranda of law are not competent evidence); Gharley v. St. John's Queens Hosp., 869 F.2d 160, 162 (2nd Cir.1989)(factual allegations in briefs or memoranda may not be considered in connection with a Rule 12 motion to dismiss); Fonte v. Board of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2nd Cir.1988) (unsupported factual allegations in memoranda of law may not be considered by district court in ruling on Rule 12 motion to dismiss); SHL Imaging, Inc. v. Artisan House, Inc., 117 F.Supp.2d 301, 315 n.6 (S.D.N.Y.  2000)(allegations in breach unsupported by any sworn statement are not evidence); Shider v. Communications Workers of America, 1999 WL 673345 at p.3 (S.D.N.Y.1999) (allegations unsupported by sworn affidavits not consider by the Court in deciding whether to grant a motion to dismiss); Pitsley v. Commissioner of Corrections, 1998 WL 178805 at p.4

(N.D.N.Y. 1998)(unsupported factual allegations in a brief or memoranda may not be considered when adjudicating a motion to dismiss); Markowitz Jewelry Co. v. Chapal/Zenray, Inc., 988 F.Supp. 404, 407 & n. 18 (S.D.N.Y.1997) (statements by counsel in briefs are not evidence).

Plaintiffs' "evidence" of record consists of the Verification of Jonathan Sack and Exhibits A1 through A57, which are attached to Plaintiffs' Memorandum of Law.  Mr. Sack's Verification contains nothing of substance and serves only to verify that the exhibits are true and correct copies.  The exhibits to the Verification **all** pertain to third party creditors of Defendants (not the alleged loan at issue in this lawsuit).  These documents fall into one of the four categories:

(1) written communications and related documents between Mr Sack and the Siegels regarding a third party creditor of the defendants, (some of which are privileged);

(2) written communications and related documents between Mr Sack and a third party creditor of the defendants;

(3) written communications and related documents between the Siegels and a third party creditor; or

(4) copies of pleadings and related documents pertaining to lawsuits filed by third party creditors.

Not one of these documents pertains to the negotiations or performance of the alleged loan that is the subject of this action.  None of these documents have any relevance to the issue of jurisdiction, and Plaintiffs have submitted no other evidence with respect to this issue.  Accordingly, Plaintiffs have failed to meet their burden to prove that their claim arises from Defendants' transaction of business in New York.

3.      **Jurisdiction Should Be Denied Because Plaintiffs Have Attempted To Establish It By Having Their Counsel Violate The Code Of Professional Conduct**

Although their attempt to establish that their claim arises from Defendants' transaction of business in New York is insufficient for the reasons discussed above, this Court should also dismiss this action because of the manner in which Plaintiffs and their counsel have attempted to maintain this action in New York.  Plaintiffs' entire jurisdictional argument is grounded in their counsel's willingness to violate numerous provisions of the New York Code of Professional Conduct.  Plaintiffs' counsel has entered his appearance as counsel of record on behalf of an existing client (the Plaintiffs) that is suing his former client (the Defendants), regarding a transaction in which he claims he was intimately involved on behalf of Defendants, and has argued that his involvement in this transaction is the reason this Court has jurisdiction over Defendants.  In an effort to benefit his existing client, Plaintiffs' counsel has submitted as evidence the contents of the file he maintained in representing Defendants, including written communications that are clearly covered by the attorney-client privilege.[9]

Plaintiffs and their counsel cannot possibly believe that these tactics are permitted under the Code of Professional Conduct governing the practice of law in New York.  Such conduct violates no less than four provisions of the New York Code of Professional Responsibility.  See DR 4-101(B)(regarding revealing client confidences); DR 5-102(A), (B), (C) and (D)(regarding counsel appearing as an advocate and as a witness); DR 5-107(B)(regarding the revelation of client confidences in order to benefit another client); and DR 5-108(A)(regarding the

---

[9] In addition, Plaintiffs' counsel has sent an E-mail to the parents of defendant Kenneth Siegel, presumably at Plaintiffs' request, in which he repeatedly ridicules, humiliates and disparages his former clients, and misrepresents past events.

representation of clients with conflicting interests); see also Rella v. N. Atl. Marine Ltd., 2004 U.S. Dist. LEXIS 22309 at pp.12-13 (S.D.N.Y. Nov. 3, 2004) ("The New York Code of Professional Responsibility specifically provides that 'a lawyer who has represented a client in a matter shall not, without the consent of the former client after full disclosure: (1) Thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client.' ")(quoting DR 5-108(A)(1), 22 NYCRR1200.27(a)(1)).  Plaintiffs should not be rewarded for employing these tactics.  Accordingly, the Court should dismiss this action.[10]

---

[10] Dismissal will not deprive Plaintiffs of the opportunity to adjudicate this dispute. Defendants have instituted a declaratory judgment action in Pennsylvania regarding this alleged loan.  The parties have agreed to refrain from proceeding with that action until this Court adjudicates this motion.  In addition, Defendants have proposed that this matter be mediated.

## CONCLUSION

For the reasons set forth above, this action must be dismissed for lack of personal jurisdiction.

          Respectfully submitted,

          /s/Richard E. Miller
          Richard E. Miller (RM 9280)
          P.O. Box 191
          Chadds Ford, PA 19317
          (610)793-2032
          (Admitted Pro Hac Vice)

          Devindra Ramesh Tiwari Kissoon (DK8130)
          Cozen O'Connor
          909 Third Avenue
          New York, NY 10022
          Telephone: 212.453.3829

Dated: January 24, 2008          Attorneys for Defendants Cozen O'Connor

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of this Reply Memorandum was served via the ECF system and by U.S. mail, first-class, postage prepaid and on January 24, 2007 upon the following parties:

Jonathan Sack, Esquire  
Sack & Sack  
110 East 59th Street  
19th Floor  
New York, New York 10022

      /s/ Richard E. Miller  
      Richard E. Miller

EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Paul Yablon and Jill Yablon, | : |
| Plaintiffs, | : No. 07 CV 11040 (DLC) |
| v. | : |
| Dental Excellence of Blue Bell, et al., | : |
| Defendants. | : |

### SUPPLEMENTAL VERIFICATION OF CINDY SIEGEL

1.   I am a defendant in this matter, and I make this verification based on my personal knowledge of the facts set forth herein.

2.   In September 2006, Jonathan Sack, at the request of the Yablons, became involved in negotiations with creditors of Dental Excellence of Blue Bell ("DEBB"). The negotiations with these creditors took place between September 2006 and April 2007. During that time period, the Yablons provided the funds to payoff some of these creditors. We would negotiate the debt down to an amount acceptable to the Yablons, and they would send us the funds to payoff the creditor. On a couple of occasions, the Yablons sent the funds to payoff a particular creditor to Mr. Sack because he was the person that had been negotiating directly with that creditor.

3.   Our negotiations regarding the repayment of the funds disbursed by the Yablons commenced in September 2007, five months after the last of those funds had been disbursed. These negotiations took place by mail, E-mail or telephone, sent from/to Pennsylvania and Connecticut. We never met with the Yablons (or anyone) in New York or communicated with

them while they were in New York with respect to these negotiations.

4. Jonathan Sack did not broker the negotiations we had with the Yablons, nor did we ever engage him to do so.

5. The first written proposal was E-mailed by the Yablons to us in September 2007. A second proposal was E-mailed to us in October 2007. We then had our attorney in Philadelphia prepare a revised promissory note and mailed it to the Yablons on October 23, 2007.

6. We never reached an agreement on the terms of repayment and in November 2007 the Yablons sued us.

7. These statements are made subject to the penalties of perjury.

Dated: January 24, 2007            _____
                                    Cindy Siegel