```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                          :
PAUL YABLON and JILL YABLON,              :
                  Plaintiffs,             :
                                          :        07 Civ. 11040 (DLC)
           -v-                            :
                                          :                ORDER
DENTAL EXCELLENCE OF BLUE BELL AND        :
KENNETH B. SIEGEL AND CINDY SIEGEL        :
INDIVIDUALLY,                             :
                  Defendants.             :
                                          :
-----------------------------------------X
```

Appearances:

For Plaintiffs:
Jonathan Sack
Sack & Sack
110 East 59th Street, 19th Floor
New York, NY 10022

For Defendants:
Devindra Ramesh Tiwari Kissoon
Cozen O'Connor
909 Third Avenue
New York, NY 10022

Richard E. Miller
P.O. Box 191
Chadds Ford, PA 19317

DENISE COTE, District Judge:

 Plaintiffs Paul Yablon and Jill Yablon ("plaintiffs") bring this action against defendants Kenneth B. Siegel and Cindy Siegel (the "Siegels") and Dental Excellece of Blue Bell ("DEBB," and with the Siegels, the "defendants") seeking repayment of $568,240.50 in loans made to the defendants in 2006 and 2007, plus interest. The complaint was filed in New York

State Supreme Court on November 8, 2007, and defendants filed a notice of removal to this Court on December 5, 2007. On December 14, 2007, defendants moved to dismiss under Rule 12(b)(2), Fed R. Civ. P., for lack of personal jurisdiction. For the following reasons, their motion is denied.

BACKGROUND

Unless otherwise indicated, the following facts are taken from the complaint and assumed to be true for the purposes of deciding the motion to dismiss. Plaintiffs are residents of Connecticut; the Siegels are residents of Pennsylvania, and DEBB -- a dental practice owned and operated by the Siegels -- is a Pennsylvania corporation with its principal place of business in Pennsylvania. Ken Siegel and Jill Yablon are siblings. Between October 12, 2006, and April 5, 2007, plaintiffs made a series of nine loans to the defendants in the total amount of $568,240.50. Plaintiffs allege that they made these loans by "placing the monies in the custody, possession and control of their attorney, Jonathan Sack, located in New York County, who made the disbursements to Defendants" at the times and in the amounts set out in a schedule included in the complaint. The schedule indicates that the loans were made at a 12% interest rate. The complaint does not allege that there existed, at the time the

loans were made, any written agreement between the parties regarding repayment.

Documents submitted in connection with plaintiffs' opposition to the motion to dismiss support the allegation that Mr. Sack -- the New York attorney who is representing the plaintiffs in this action -- received funds from the plaintiffs that were then used to pay defendants' creditors.  Moreover, these documents also demonstrate that Mr. Sack acted as defendants' attorney in negotiating with and litigating against several of these creditors.[1]  Most prominently, the plaintiffs' documents show that Mr. Sack acted as the defendants' attorney in negotiating a settlement to litigation commenced by Commerce Bank ("Commerce") in Pennsylvania state court against the defendants.  Commerce lent the defendants $733,460 in November of 2002, secured by DEBB's fixtures and the Siegels' home.  In

---

[1] For example: (1) A letter from Mr. Sack to an attorney for one of DEBB's creditors, dated October 19, 2006, begins, "This firm represent[s] Dental Excellence of Blue Bell and Kenneth B. Siegel. Reference is made to the demand made upon my client for the total of $13,561.68."  (2) A letter of October 19, 2006, to another creditor (Aurum Ceramic Dental Laboratory) confirms "the settlement with my client . . . for the total amount of S17,500," and further states that Mr. Sack had "set up a wire transfer to your designated account for the first installment of $10,000."  (3) An email from Mr. Sack to both the plaintiffs and defendants states that "I was able to get Creditor's Interchange to accept 50%, which is a savings of [$]36,616/50. . . . I have the settlement paperwork."  (4) Several letters also indicate that Mr. Sack represented the defendants in litigation in Pennsylvania initiated by various creditors (including Commerce Bank, as discussed above), and reflect that Mr. Sack engaged in substantial settlement discussions on behalf of the defendants.

March of 2007, following extensive negotiations with Mr. Sack, the defendants settled with Commerce Bank and agreed to pay $470,000 in satisfaction of this loan.  The plaintiffs' documents indicate that Mr. Sack issued two checks totaling that amount from his "attorney account" in satisfaction of the defendants' settlement obligation, and plaintiffs allege that they supplied these funds to Mr. Sack.  Mr. Sack's final letter to Commerce's attorney, in which the final settlement payment ($370,000) was enclosed, concludes, "[o]n behalf of my client allow me to thank you for your courtesies and cooperation during this long and arduous negotiation."  Defendants do not contest that Mr. Sack acted as their attorney in these matters.

Following these events, in October of 2007, plaintiffs allege that they attempted to negotiate repayment terms with the defendants, but that the defendants refused to execute a promissory note containing acceptable terms.  Defendants did unilaterally execute an unsecured promissory note for $568,240.50 with an interest rate of 4.7%, but plaintiffs considered the note insufficient due to the low interest rate and lack of security in the event of default.  Plaintiffs also allege that the defendants attempted to repay a portion of the loans by check, but that this payment was "based upon terms that were unacceptable to Plaintiffs," and that this check was therefore not negotiated.  At the time the complaint was filed,

the defendants had thus not repaid any portion of the alleged loans.[2]

DISCUSSION

Plaintiffs argue that there is personal jurisdiction over the defendants pursuant to New York's Civil Practice Law and Rules Section 302(a)(1) ("CPLR 302(a)(1)").[3]  In a diversity case, the issue of personal jurisdiction must be determined according to the law of the forum state.  D.H. Blair & Co., Inc., v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006).  A district court may exercise jurisdiction over any defendant who would be subject to the jurisdiction of a court of general jurisdiction in the state in which the district court is located.  Fed. R. Civ. P. 4(k)(1)(a); Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 94 (2d Cir. 2000).  Any exercise of personal jurisdiction over the defendants must also comport with

---

[2] The complaint makes reference to claims against "Bank of America," and claims on behalf of "Birnbaum," but these appear to be typographical errors.

[3] CPLR 302(a)(1) provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state
> . . . .

CPLR 302(a)(1).

the Due Process Clause.  D.H. Blair, 462 F.3d at 104; Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005).

"If the defendant is content to challenge only the sufficiency of the plaintiff's factual allegation, in effect demurring by filing a Rule 12(b)(2) motion, the plaintiff need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction."  Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990); see also Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007); Grand River Enters., 425 F.3d at 165.  "A plaintiff can make this showing through his own affidavits and supporting materials containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant."  Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001) (citation omitted).  At this stage, the pleadings and affidavits are construed in the light most favorable to the non-moving party, and all disputed issues of fact will be resolved in that party's favor.  Id.; DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001).

A. CPLR 302(a)(1)

In order to establish jurisdiction under CPLR 302(a)(1), courts must decide "(1) whether the defendant 'transacts any

business' in New York and, if so, (2) whether this cause of action 'arises from' such a business transaction." Best Van Lines, 490 F.3d at 246 (citation omitted).  Transacting business has been defined as "purposeful activity -- 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  Id. (citing McKee Elec. Co. v. Rauland-Borg Corp., 229 N.E.2d 604, 607 (N.Y. 1967)).  This inquiry is a fact-specific one, and "[c]ourts look to the totality of the defendant's activities within the forum."  Id. (citation omitted).

In non-defamation cases, "proof of one transaction, or a single act, in New York is sufficient to invoke long-arm jurisdiction, even though the defendant never enters New York."  Id. at 248 (citation omitted) (collecting cases).  Furthermore, while telephone contacts between a nondomiciliary defendant and a New York party are insufficient by themselves to confer jurisdiction under CPLR 302(a)(1), Fiedler v. First City Nat'l Bank, 807 F.2d 315, 317-18 (2d Cir. 1986), a nondomiciliary defendant will be subject to jurisdiction if the defendant uses these telephone communications deliberately to "project" himself into business transactions occurring within the state.  See, e.g., Parke-Bernet Galleries, Inc. v. Franklyn, 256 N.E.2d 506, 508 (N.Y. 1970).  Similarly, "[i]n cases involving an out of

7

state party's retention of a New York attorney, jurisdiction has been upheld where a defendant, beyond merely retaining a lawyer in New York, has purposely availed itself of the services of that New York lawyer in this state." Fischbarg v. Doucet, 38 A.D.3d 270, 273 (N.Y. App. Div., 1st Dep't 2007), cited in Best Van Lines, 490 F.3d at 248.

New York courts have held that a claim "arises from" a particular transaction when there is "some articulable nexus between the business transacted and the cause of action sued upon, or when there is a substantial relationship between the transaction and the claim asserted." Best Van Lines, 490 F.3d at 246 (citation omitted); see also Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006); Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 31 (2d Cir. 1996). "A connection that is 'merely coincidental' is insufficient to support jurisdiction." Sole Resort, 450 F.3d at 103 (citing Johnson v. Ward, 829 N.E.2d 1201 (N.Y. 2005).

The plaintiffs have carried their burden at this early stage of the litigation of showing that there is personal jurisdiction over the defendants. Defendants retained Mr. Sack,[4] a New York attorney, to litigate and negotiate on their behalf

---

[4] The fact that defendants may have retained Mr. Sack at the urging of the plaintiffs does not alter the analysis.

8

in order both to reduce the size of and -- with the plaintiffs' funds -- to satisfy their outstanding debts.  The Defendants also communicated extensively with Mr. Sack in New York via fax and email[5] regarding these litigations and negotiations, and consistently reported developments to Mr. Sack -- such as new demands from creditors -- so that he could take additional action.  These acts constitute purposeful activity within New York, despite the fact that defendants are not alleged to have been physically present in New York.  See Fischbarg v. Doucet, 38 A.D.3d at 275; see also Best Van Lines, 490 F.3d at 248.

In addition, there is a "substantial relationship between" this New York conduct and "the claim asserted" by the plaintiffs, Best Van Lines, 490 F.3d at 246, as the question of whether there existed a contract between the parties here is intimately connected with the communications and legal arrangements between the defendants and Mr. Sack.  For example, more than 80% of the principal amount sued upon here -- $470,000 -- was paid to Commerce by the plaintiffs, via Mr. Sack, following "long and arduous" negotiations conducted on defendants' behalf by Mr. Sack from New York.  While it is far from clear on the current record when, if ever, a formal contract between the parties arose that could support the

---

[5] Plaintiffs' opposition brief makes reference to numerous telephone calls as well.

9

plaintiffs' contract claim, it would be unreasonable to conclude at this stage that there is not "some articulable nexus between the business transacted" between the defendants and Mr. Sack "and the cause of action sued upon."  Id.  Thus, plaintiffs have made a prima facie showing under CPLR 302(a)(1) of personal jurisdiction over the defendants.

B. Due Process

If jurisdiction exists under New York law, then it must be determined "whether asserting jurisdiction . . . would be compatible with requirements of due process established under the Fourteenth Amendment."  Best Van Lines, 490 F.3d at 242.  To find specific jurisdiction, the Court must determine that "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).  "The crucial question is whether the defendant has 'purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws, such that the defendant should reasonably anticipate being haled into court there.'"  Best Van Lines, 490 F.3d at 242-43 (citing Burger King, 471 U.S. at 474-75).  This requirement "ensures that a defendant will not be haled into a

jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." Burger King, 471 U.S. at 475; see also Agency Rent A Car Sys., 98 F.3d at 32.

The second part of the due process personal jurisdiction test is determining the reasonableness of the exercise of jurisdiction. In undertaking this analysis, the Supreme Court has identified the following factors:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 129 (2d Cir. 2002) (citing Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 113-14 (1987)). "Where a plaintiff makes the threshold showing of the minimum contacts required for the first test, a defendant must present 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" Id. (quoting Burger King, 471 U.S. at 477). See also Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996).

Plaintiffs have sufficiently alleged that the defendants purposefully availed themselves of the privilege of conducting business in the forum state. As discussed above, defendants

retained and communicated extensively with their New York attorney, who litigated and negotiated on their behalf in order to reduce the size of and pay off the debts that underlie the alleged contract on which this action is founded.  It would thus have been reasonable for the defendants to "anticipate being haled into court" in New York.  Best Van Lines, 490 F.3d at 243 (citation omitted).

Moreover, it is reasonable to exercise personal jurisdiction over the defendants.  Although litigating this case in New York will impose some burden on the defendants, as they live and operate their business in Pennsylvania, such burden must be considered minimal, and defendants have not asserted otherwise.  In addition, by filing this action, plaintiffs have indicated that a New York forum offers them convenient and effective relief.  Finally, while the other factors to be considered do not point strongly toward litigating this dispute in New York, neither have the defendants made "'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"  Bank Brussels Lambert, 305 F.3d at 129 (quoting Burger King, 471 U.S. at 477).

C.   Conflict of Interest

While defendants' motion to dismiss must be denied for the reasons stated above, their motion papers raise an issue that is

12

central to the further proceedings in this case -- namely, that Mr. Sack's representation of the plaintiffs in this action, following his representation of the defendants in the litigations and negotiations described above, does not comport with the standard imposed by the New York Lawyer's Code of Professional Responsibility.  First, as the discussion above indicates, Mr. Sack knows or should know that he is likely "to be called as a witness on a significant issue on behalf of [his] client," as he was a witness to, and participant in, many events that are relevant to the instant action.  N.Y. Code Prof. Resp. DR 5-102(A).  Second, in representing the plaintiffs in this action against his former clients in a matter closely related to his previous representation, Mr. Sack has a significant conflict of interest.  Id. DR 5-108(A)-(B).  Finally, Mr. Sack's use of documents generated during his representation of the defendants against the defendants in connection with this motion may implicate several other disciplinary rules.  See, e.g., id. DR 4-101 (Preservation of Confidences and Secrets of a Client); id. DR 5-108(A)(2) (Use of Confidences of a Former Client).

   An Order issued concurrently with this Opinion will schedule an initial pretrial conference in this action. Plaintiffs are directed to retain new counsel to represent them in this matter for the initial pretrial conference.

CONCLUSION

Defendants' motion to dimiss, filed on December 14, 2007, is denied.

SO ORDERED:

Dated:   New York, New York
         March 24, 2008

```
                                    _____
                                            DENISE COTE
                                    United States District Judge
```